McCrory et al. v. Chambers et al.

1. *Corporations—Ultra Vires.*—Corporations have such powers as are expressly given them by the law which authorizes their creation, and such other powers as are necessarily incidental to the proper exercise of such express powers. Such express powers are readily ascertained from the statute or the charter of the corporation.

2. *National Banks—Right to Make Donations of Money.*—The right to make donations of money is not among the chartered powers of a national bank. The directors can use the funds and property of the bank only for proper banking purposes and for the strict furtherance of the business objects and financial prosperity of the corporation.

3. *National Banks—Use of Funds for Charity, etc.*—The directors of a national bank can not use any portion of the money of the bank for objects of usefulness or charity, or the like, however worthy of encouragement or aid. They can not make gifts from the corporate funds.

4. *National Banks—Incidental Powers of the Directors.*—The incidental powers of the directors of a national bank are such as are necessary to the efficient exercise of the express powers. A donation of the sum of $500 of the funds of the bank, to induce a manufacturing company to remain in the town where such bank is located, is unauthorized and illegal.

Memorandum.—Suit against stockholders in a national bank for misappropriation of funds. Appeal from a decree in favor of complainants rendered by the Circuit Court of Coles County; the Hon. FRANCIS M. WRIGHT, Circuit Judge, presiding. Heard in this court at the May term, A. D. 1892, and affirmed. Opinion filed October 31, 1892.

### APPELLANTS' STATEMENT OF THE CASE.

The First National Bank of Charleston was organized with a capital stock of $100,000, divided into 1,000 shares of $100 each. Complainants are the owners of 320 of said shares; and appellants, who own 280 shares, are the directors of said bank. On December 1, 1892, appellants, at a meeting of the directors, by resolution, authorized and instructed the president to subscribe for said bank $500, to be paid to retain the Bain Manufacturing Company at Charleston. On January 19, 1891, at a meeting of said directors, the president was instructed and authorized to pay over to the trustees authorized to receive subscriptions for the purpose

of retaining the Bain Manufacturing Company in Charleston, the sum of $500 theretofore subscribed by the bank for that purpose, and charge the same to the expense account; and that afterward the president did pay said sum to said trustees, and had the same charged to the expense account. Complainants filed a written protest with said board of directors against said payment, but appellants disregarded it. Said payment was a mere gift or donation to the company. On May 6, 1891, appellant Curtis L. Davis, by order of appellants, charged up to profit and loss $214.34, being the amount of a judgment, attorney's fees and costs of James Hamilton for the use of Patrick Kane against Francis M. Randolph and William E. McCrory in the Circuit Court of Coles County, Illinois; that said bank was under no obligation to pay said sum, and the payment thereof was a mere gift to said William E. McCrory. Before bringing this suit complainants demanded of the bank that it bring suit against appellants to recover said sums of money, but the bank, being controlled by appellants, refused to do so. Complainants sued for themselves and all other stockholders except appellants, and prayed that appellants might be decreed to pay back said several sums of money to the bank. A demurrer to the bill having been overruled, and appellants electing to stand by their demurrer and declining to answer, the court decreed that appellants repay both of said sums of money to the bank, and pay costs. To reverse this decree appellants prosecute this appeal.

### Appellants' Brief.

For the complainants in this case to carry on this litigation, they should show in their bill, to the satisfaction of the court, that they have exhausted all the means within their reach to obtain, within the corporation itself, the redress of their grievances, or action in conformity to their wishes.

" He must make an earnest, not a simulated, effort with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to the

court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body in the matter of which he complains. And he must show a case, if this is not done, where it could not be done or it was not reasonable to require it. The efforts to induce such action as complainant desires on the part of the shareholders, when that is necessary, and the cause of failure in these efforts, should be stated with particularity." Hawes v. Oakland, 104 U. S. 450.

Our own Supreme Court, in Richelieu Hotel Co. v. International Military Encampment Co., 29 N. E. Rep. 1044, which was a suit upon a subscription of $1,000 by said hotel company to a fund to establish a military encampment at Chicago, say: It is next urged that said subscription by the defendant is *ultra vires*. It may be inferred from the name of the defendant corporation that it was organized for the purpose of maintaining and operating a hotel. It also appears from those portions of the defendant's certificate of incorporation read in evidence that the object for which it was incorporated was " to conduct a general hotel business."

Wiley & Neal and A. J. Fryer, attorneys for appellants.

### Appellees' Brief.

The liability of the directors for a misuse of the funds of the bank is joint and several, and all directors who take any part in the illegal transaction are liable. Thompson on Liability of Officers of Corporations, 353, 354.

The directors of banks are trustees for the bank, the stockholders and the depositors, and to each they owe duties, for the violation of which the law will hold them liable. Delano v. Case, 17 Brad. 536, affirmed in 121 Ill. 249.

Whenever a cause of action exists, primarily in the bank against the directors for misapplying the funds of the corporation, or wrongfully dealing with the corporate property, and the corporation either actually or virtually refuses

to institute or prosecute the suit, then an action may be brought and maintained by a stockholder or stockholders, either individually, or suing on behalf of themselves and all others similarly situated, against the wrong-doing directors. Robinson v. Smith, 3 Paige (N. Y.) 231–232; Peabody et al. v. Flint et al., 6 Allen (Mass.) 52; City of Chicago v. Cameron et al., 120 Ill. 456; Thompson's Liability of Officers of Corporations, 265, 352, 383, 391; Hodges v. New England Screw Co., 1 R. I. 312.

If the corporation is under the control of the guilty directors, or if, for any cause, there is a reasonable certainty that the corporation would not sue,‘then there is no necessity for a demand to sue. The directors could not be trusted to control and prosecute a suit against themselves. Chicago Hansom Cab Co. v. Yerkes, Chicago Legal News, May 21, 1892, Vol. 24, p. 307; City of Chicago v. Cameron et al., 120 Ill. 457; Robinson v. Smith, 3 Paige (N. Y.) 232–233; Thompson on Liability of Officers of Corporations, 265–383.

When the acts complained of are *ultra vires*, application to, and refusal of, directors to institute a suit is not essential in order to authorize a suit by a stockholder. Wood's Field on the Law of Corporation (2d Ed.) 513–514, Secs. 360, 361; Heath v. Erie R. R. Co., 8 Blatch. (U. S.) 347; Brewer v. Boston Theater, 104 Mass. 378.

Even if a demand was necessary, the allegation of demand made in the bill is sufficient. Thompson's Liability of Officers of Corporations, 385, 386.

The liability of officers is joint and several, and directors who take any part in the illegal transaction are liable. Thompson's Liability of Officers of Corporations, 353, 354.

JAMES A. EADS, solicitor for appellees.

OPINION BY THE COURT.

The appellees filed a bill in chancery in the Circuit Court of Coles County, in which they allege that they are the owners of 320 shares of the capital stock of the First National Bank of Charleston, Illinois, a corporation organized under the national banking laws, and that

the appellants own 280 shares of the stock of the corporation and compose the board of directors of the bank; that the capital stock of the bank is $100,000, divided into 1,000 shares of $100 each; that the defendants, as such directors, at a meeting of the board on the 1st day of December, 1890, by a resolution duly passed and entered of record, directed the appellant, William McCrory, president of said bank, to subscribe for said bank the sum of $500, to retain the Bain Manufacturing Company at Charleston; and afterward, on the 19th day of January, 1891, at a meeting of the board of directors (the defendants), a resolution was adopted instructing and directing the president of the bank to pay to the trustees appointed to receive subscriptions for the purpose of retaining the Bain Manufacturing Company at Charleston the sum of $500, and to charge the same to the expense account of the bank; that the president, in compliance with the resolution and direction of directors, took of the funds of the bank the sum of $500, and paid it to the said trustee, and had the same charged to the expense account of the bank, which payment is alleged to be an illegal disposition of the moneys of the bank and an injury to said bank and its stockholders; that such payment was a mere gift or donation to said Bain Manufacturing Company, and that before it was paid the complainants filed with said directors a protest in writing against the payment, which the defendants wholly disregarded.

The bill further alleged that by the order of the defendants (directors of said bank) the sum of $214.34 was paid out of the funds of the bank upon a judgment rendered in the Circuit Court of Coles County in favor of James Hamilton, for the use of Patrick Kane, and against Francis M. Randolph and William E. McCrory, and said sum, by order of the defendants, charged to the account of profit and loss on the books of the said bank; that the bank was in no wise indebted upon said judgment and under no obligation to pay the same, and that such payment was a mere gratuity to William McCrory and in fraud of the rights of said bank and its stockholders.

It is then alleged that the persons defendant to the bill, and who did the acts complained of, are still the directors and officers of the bank, and that therefore a demand upon said bank to bring suit would have been wholly useless, yet that the complainants (appellees) did, before beginning the suit, demand of said bank that it bring suit to recover said money, but that said bank, being controlled by the defendants (appellants), refused to do so.

The bill further averred that the capital stock of the bank was held by some forty or fifty persons, some of whom were unknown, some residents of other states or territories, and that it would be impracticable to make them defendants, but that the suit is brought for all stockholders (except the appellants) who may wish to join. The bill closed with a prayer for a decree against the appellants for the payment to the bank of the sums so, as alleged, illegally disbursed.

To this bill the defendants interposed a demurrer, the only ground of objection being that the matters alleged in the bill were insufficient to entitle the complainants therein to any relief in equity. The court overruled the demurrer and required the defendants to answer, which they declined to do, but elected to abide the demurrer. Whereupon a decree was rendered in favor of the bank and against the appellants for the moneys shown by the bill to have been improperly paid out of the funds of the bank by order of the appellants. From this decree the appellants prosecute this appeal.

The decree must rest upon and be supported by the bill, and it is asserted that the bill is insufficient in several respects. It is first objected that the bill does not sufficiently allege that each of the defendants committed or participated in the commission of the alleged wrongful acts of the board of directors.

The allegation of the bill as to the first misappropriation is "that at a meeting of the board of directors of said bank, said defendants, by a resolution duly passed, instructed and authorized" the president of the bank to subscribe $500, to be paid by the bank to retain the manufacturing company in Charleston, and as to the other alleged wrongful applica-

tion of funds the allegation is that " Curtis L. Davis charged up to the account of profit and loss, by the order of the defendants (the directors of the bank), the sum of $214.34, being the amount of a judgment," etc.

The language employed in each of these allegations seems to us to charge that all the defendants participated in the acts complained of, especially as the only alleged ground of insufficiency mentioned in the demurrer is the general one that the allegations of the bill are insufficient to entitle complainants to any relief whatever.

It is urged that it does not sufficiently appear from the bill that the complainants, before instituting the suit in their own names, endeavored, as required by law, to have the corporation redress the grievance complained of.    The cause of action and the right of action is primarily in the bank. A recovery, if had, is for the benefit of the bank.    This action is, however, against the officers and directors of the bank, who, as such, control its corporate action.    The bill avers that the appellees, before bringing suit, did demand that the bank should institute the proceeding, but that the defendants (appellants), being the managing officers and directors of the bank, refused to do so.    We do not think such demand was at all necessary, or that the complainants (appellees) were required to endeavor to obtain action by the stockholders as a body.    Such united action may be desirable, but it is not indispensable to a successful prosecution of the action.    An individual stockholder may present the cause to the court by a bill in chancery and maintain the suit in behalf of himself and for the benefit of the corporation, making the corporation a party either complainant or defendant.    Pomeroy Eq. Juris., Vol. 3, p. 10 ; Robinson v. Smith, 3 Paige, 222; Chicago v. Cameron, 120 Ill. 447; Chicago Hansom Cab Co. v. Yerkes, 30 N. E. Rep. 667.

It is said that it does not appear from the bill that the bank was without power to contribute $500 toward a fund to be used in securing the retention of the Bain Manufacturing Company at Charleston.    It is argued with much earnestness that the donation, viewed simply from a busi-

ness standpoint, may have been decidedly advantageous to the financial interests of the bank. In this connection we are asked to consider the case of Richelieu Hotel Co. v. International Encampment Co., 29 N. E. Rep. 1044, where it is held by our Supreme Court that a subscription by the hotel company (a corporation) to a fund, to aid in establishing and holding, near the city of Chicago, an international military encampment, was not beyond its corporate power. In that case it is said: "Power to carry on the hotel business necessarily carries with it, as an incident, the power to adopt and promote reasonable expedients, directly calculated to increase the number of patrons of the hotel. The holding, in or near the city of Chicago, of an international military encampment, * * * was likely to bring a large number of strangers who would necessarily need hotel accommodations, and would thus largely increase the patronage of the various hotels in the city—the Richelieu among the rest. So it is argued, in the case at bar, that the Bain Manufacturing Company might add greatly to the business and the population of Charleston, and might deposit larger sums of money in the bank, or might, as a borrower of money, become a customer of the bank, etc., and that the directors ought to be vested with the power of aiding in retaining such an institution in the city as incidental to the express power granted to it to conduct the general business of banking.

"We understand the rule to be that corporations have such powers as are expressly given them by the law which authorizes their creation, and such other powers as are necessarily incidental to the proper exercise of such express powers. The express powers are readily ascertained from the statute or the charter of the corporation. The right to make donations of money is not among them."

"The directors (of a national bank) can use the funds and property of the bank only for proper banking pusposes, and for the strict furtherance of the business objects and financial prosperity of the corporation. They can not use any portion of the money for objects of usefulness or

charity or the like, however worthy of encouragement or aid. They can not make gifts from the corporate fund. All their transactions must be strictly matter of business." Morse on Banks and Banking, Vol. 1, Sec. 127, p. 258, 259.

The incidental powers are such as are necessary to the efficient exercise of the express powers. A donation of the funds of a bank is *prima facie* unauthorized. Such power is not expressly given, nor is it apparent, in the absence of proof of special circumstances, that it is necessary to the proper and successful exercise of any express power. The donation by the Richelieu Hotel Company to a fund raised for the particular purpose of bringing together, in or near to the city, a large number of persons, who would necessarily need hotel accommodations, was deemed by the Supreme Court so clearly intended and likely to advance the financial interests of the hotel company that it was but a judicious exercise of power incidental to the general power given that corporation " to conduct a general hotel business." It was but an expenditure of its corporate funds for the purpose of increasing the number of its patrons and consequently its receipts. It may be conceded to be apparent that the retention of the Bain Manufacturing Company at Charleston would be of general benefit and advantage to that city, but that the bank will be financially benefited, except so far as it may share in the general prosperity of the community, does not appear. That its pecuniary interest will be advanced and directly forwarded can not be assumed from the mere fact that a manufacturing company is induced to continue its business in the same city in which the bank is located.

The presumption is that the mere donations are injurious to a bank and unwarrantable. If directors order such donations to be made they must be prepared to show the particular circumstances which called for and justified such a diminution of the funds intrusted to their care. The allegations of the bill show, *prima facie* at least, unauthorized appropriations of the moneys of the bank; and further, the bill charged that the appropriation to the fund for the manufacturing company was an injury to the bank.

The directors were called upon to answer, and if peculiar facts and circumstances existed which justified the bank in aiding in the retention of the manufacturing company or in paying the judgment mentioned in the bill, the directors should have set up and made such facts known in an answer to the bill.

The demurrer was, we think, properly overruled, and the decree which followed, properly rendered. It must be and is affirmed.