ARKANSAS VALLEY & W. RY. Co. v. FARMERS' & MERCHANTS' BANK.

No. 2091, Okla. T. Opinion Filed June 21, 1908.

(96 Pac. 765.)

**BANKS AND BANKING—Contracts—Railroad Bonus—Ultra Vires.**
A note or contract executed by a bank, organized and existing under and by virtue of the laws of the territory of Oklahoma, as a subscription to secure the construction and operation of a railroad, is ultra vires and void, and the courts will not enforce it.

(Syllabus by the Court.)

*Error from District Court, Noble County; Bayard T. Hainen*
*Judge.*

Action on railroad bonus note by the Arkansas Valley & Western Railway Company against the Farmers' & Merchants' Bank. Judgment for defendant, and plaintiff brings error. Affirmed.

On the 5th of May, 1904, plaintiff in error, plaintiff below, filed its petition in the District court of Noble county, Okla. T., against the above-named defendant in error on a certain note or contract in writing, as follows:

"$1,000. Perry, Oklahoma. May 12, 1902. For value received and for benefits accruing to me from the construction of a railroad from some point on the St. Louis & San Francisco Railroad between Sapulpa and Tulsa, I. T., through the city of Perry, in Noble county, to connect with the Blackwell, Enid & Southwestern Railway, I, the undersigned, agree to pay to the order of the Arkansas Valley & Western Railway Company at the ———— Bank, Perry, Oklahoma, the sum of one thousand dollars. The said amount to become due and payable when said railroad shall be constructed to and into the city of Perry, Oklahoma. It is also provided that if said road is not constructed before January 1, 1904, this obligation shall be void. Farmers' & Merchants' Bank, by H. L. Boyes, Pt."

The petition, after setting out the obligating features of the contract, makes the following averment in reference thereto:

"That it has performed all the conditions precedent on its part; that said railroad was duly constructed from Tulsa, I. T., a point on the St. Louis & San Francisco Railroad, through the city of Perry, Noble county, Okla., to Enid, Okla., where it connects with the Blackwell, Enid & Southwestern Railway; that said railroad was constructed to and into the city of Perry, Okla., in October, 1903, and regular train service was inaugurated on said railroad on the 28th day of December, A. D. 1903; that by reason of said construction of said railroad and the inauguration of regular train service, said note became due and payable on and prior to December 28, 1903."

The defendant filed a demurrer, on the ground that the petition did not state facts sufficient to constitute a cause of action,

which was by the court sustained, and the case is before this court by virtue of proceedings in error begun in the Supreme Court of the territory of Oklahoma.

*James B. Diggs* and *Russell G. Lowe,* for plaintiff in error. *Harris & Wilson,* for defendant in error.

DUNN, J. (after stating the facts as above). From the argument of counsel in their briefs it is gathered that the demurrer was sustained by the trial court on the ground that the note in question was a bonus note, given by the defendant to the plaintiff in consideration of its constructing a line of railroad, as set forth therein. In answer to this it is argued in the brief of plaintiff that the note provided, by its terms, "for value received and for benefits accruing," etc., which phrase was followed by the language providing for the consideration growing out of the construction of the railway, and that there was nothing in the note to indicate that the value received was merely that accruing to it from the railway being built; and we are asked to say that the note is susceptible of this construction. We believe that a reading of the note itself reasonably shows that the sole consideration for it was that which followed the language "for value received"; that this phrase was part of the entire phrase and sentence which set up the real consideration of the note. But if this were not true, all doubt in our judgment is removed when, in connection with the language of the note, the pleading in question is considered. That part of the petition which is quoted clearly shows that the company relied solely upon the fact "that it has performed all the conditions precedent on its part," and that the railroad had been duly constructed. This being true, that portion of the plaintiff's brief and argument dealing with the right of a bank, in due course of business, to execute notes will be eliminated from this discussion, and the court's attention will be directed to the other feature involved in this case, which may be stated generally to be: Can a bank, organized under the statutes of the territory of Ok-

lahoma, legally make a contribution for the purpose of inducing the construction of a railroad?

The petition avers that the defendant "is a banking corporation, duly organized and existing under and by virtue of the laws of the territory of Oklahoma," and section 1, c. 8, par. 242, Wilson's Rev & Ann. St. Okla. 1903, sets out the business which a bank may be permitted to lawfully conduct, and enumerates the same as follows:

"Any three or more persons, a majority of whom shall be residents of this territory, may organize themselves into a banking association and be incorporated as a bank, and shall be permitted to carry on the business of receiving money on deposit, either with or without interest, and of buying and selling exchange, gold, silver, coin, bullion, uncurrent money, bonds of the United States or of this territory, or any of the cities, counties and school districts therein, and territorial, county, city, township and school district, or other municipal indebtedness, and loaning money on chattel and personal security and to own a suitable building, furniture and fixtures for the transaction of its business, the value of which shall not exceed one-third of the capital of such bank fully paid: Provided, that nothing in this section shall prohibit such bank from holding and disposing of such real estate as it may acquire through the collection of debts due to it; and, provided, that all banking institutions now organized as corporations doing business in this territory, are hereby permitted to continue said business as at present incorporated, but in all other respects their business and the manner of conducting the same and the operation of said bank shall be carried on subject to the provisions of this act and in accordance therewith; and provided further, that no bank shall engage in any business other than such as is authorized by this act."

The defendant contends that the giving of this note, for the purposes set out, was other than such as it was authorized to do. The plaintiff's contention is that the giving of such a note was lawful, and not against public policy, and hence that the bank could make it for this reason. The reliance of the defendant is that the note is *ultra vires* and hence void. The bank was a corporation, organized for the purpose of doing a specific business,

and the fact that such a note as this was not illegal in itself, or illegal because it violated the public policy of the territory, did not necessarily make of it a business such as the bank could have entered into.

In discussing this same proposition, Chief Justice Comstock, in the case of *Bissell v. Michigan Southern & Northern Indiana Railroad Companies,* 22 N. Y. 258, says:

"The words *'ultra vires'* and 'illegality' represent totally different and distinct ideas. It is true that a contract may have both those defects, but it may also have one without the other; for example, a bank has no authority to engage, and usually does not engage, in benevolent enterprises. A subscription, made by authority of the board of directors, and under the corporate seal, for the building of a church, or college, or an almshouse, would be clearly *ultra vires*, but it would not be illegal. If every corporator should expressly assent to such an application of the funds, it would still be *ultra vires;* but no wrong would be committed, and no public interest violated. So, a manufacturing corporation may purchase ground for a schoolhouse or a place of worship for the intellectual, religious, and moral improvements of its operatives. It may buy tracts and books of instruction for distribution amongst them. Such dealings are outside of the charter; but, so far from being illegal or wrong, they are, in themselves, benevolent and praiseworthy. So a church corporation may deal in exchange. This although *ultra vires,* is not illegal, because dealing in exchange is, in itself, a lawful business, and there is no state policy in restraint of that business."

So that from this it will be seen that the enterprise involved in this transaction may have been an entirely legal and laudable one, and yet not such a one as a corporation could engage in, by reason of the fact that it was without the scope and purpose of its creation. An individual, generally speaking, may do those things which the law does not prohibit, while under the same rule a corporation can do those things only which the charter of its creation or the law will permit it to do; and, while this obligation might have been enforceable against an individual, because not illegal, or against the policy of the law, still it is not an enforce-

able obligation of a banking corporation, for the sufficient reason that the power to do it was not contained within its specific grant, nor within the implied powers necessary to carry out the terms of such grant. When we look at the statute above cited to ascertain the things which the defendant could do in pursuit of its business, we find them specifically enumerated to be those of receiving money on deposit, buying and selling exchange or bonds of the United States or of other municipalities, or loaning money, and that it might own a suitable building, etc., and weigh in these terms the conditions of this obligation, it is seen at a glance that the investing in a railroad is not among them. Neither can it be said that a grant or donation of its funds to such a corporation could rationally be claimed to come within the scope of such business. The Legislature was not satisfied to leave the construction of this grant or its limit to the application of the usual rule adopted by the courts, but placed the specific limitation upon banking corporations that "no bank shall engage in any business other than such as is authorized by this act." The business involved in this transaction was clearly beyond the specific terms of the act and not within the implied scope of the powers conferred; hence, the court in sustaining the demurrer did not commit error. In support of this doctrine, attention is called to the following authorities: *California National Bank v. Kennedy,* 167 U. S. 362, 17 Sup Ct. 831, 42 L. Ed. 198; *First National Bank of Concord v. Hawkins,* 174 U. S. 364, 19 Sup. Ct. 739, 43 L. Ed. 1007; *McCrory et al. v. Chambers et al.,* 48 Ill. App. 445. The bank, in entering into this obligation, unquestionably believed that the construction and operation of the line of railroad would be of benefit to it by increasing the population within the territory from which it drew business. It was this consideration, no doubt, which induced the president, acting for it, to execute the contract.

The case of *McCrory et al. v. Chambers et al., supra,* is an instructive one on the proposition involved. In that case the bank made a contribution of its assets in the sum of $500 to retain a manufacturing company in the town where it was located. On

exception being taken to this action by some of the shareholders, it was, as is said by the court, "argued with much earnestness that the donation, viewed simply from a business standpoint, may have been decidedly advantageous to the financial interests of the bank." But the court held that this was not sufficient argument to overcome the plain provision of the law that " 'corporations have such powers as are expressly given them by the law which authorizes their creation, and such other powers as are necessarily incidental to the proper exercise of such express powers. The express powers are readily ascertained from the statute or the charter of the corporation. The right to make donations of money is not among them. The directors [of a national bank] can use the funds and property of the bank only for proper banking purposes, and for the strict furtherance of the business objects and financial prosperity of the corporation. They cannot use any portion of the money for objects of usefulness or charity or the like, however worthy of encouragement or aid. They cannot make gifts from the corporate fund. All their transactions must be strictly matter of business' Morse on Banks and Banking, vol. 1, pp. 258, 259, § 127. The incidental powers are such as are necessary to the efficient exercise of the express powers. A donation of the funds of a bank is *prima facie* unauthorized. Such power is not expressly given, nor is it apparent, in the absence of proof of special circumstances, that it is necessary to the proper and successful exercise of any express power." The foregoing, in our judgment, is a correct expression of the rule, not only for national banks, but for state banks as well.

The judgment of the trial court is affirmed.

All the Justices concur.