**ROXANA PETROLEUM CO. v. COVINGTON STATE BANK.**

No. 17568—Opinion Filed March 6, 1928.

Rehearing Denied Sept. 18, 1928.

(Syllabus.)

**Corporations—Recovery Against Corporation Accepting Benefits Under Ultra Vires Contract.**

When suit is brought against a corporation on an ultra vires contract, that is, a contract beyond the power of the corporation to make or perform, and where such corporation has received benefit under such contract, the action is not maintained by virtue of such contract, but upon a contract which the law implies, that the corporation will return, or account for, the benefit received by it by virtue thereof. To maintain such an action is not to affirm, but to disaffirm, the original contract. In such case a recovery cannot be had in excess of the benefit received by the corporation.

Commissioners' Opinion, Division No. 2.

Error from District Court, Garfield County; Charles Swindall, Judge.

Action by Roxana Petroleum Company, a corporation, against the Covington State Bank et al. Judgment for defendant bank, and plaintiff appeals. Affirmed.

Koerner, Fahey & Young and Dyer & Keim, for plaintiff in error.

Simons, McKnight, Simons & Smith, for defendant in error.

DIFFENDAFFER, C. This action was commenced in the district court of Garfield county by the Roxana Petroleum Company, hereinafter referred to as plaintiff, against the Superior Oil Refining Company, a corporation, hereinafter referred to as the refining company, and the Covington State Bank of Covington, Okla.

The petition as first filed was based upon an account for crude oil sold and delivered by plaintiff to the refining company, upon which plaintiff claimed a balance due of $16,384.34, and a guaranty, alleged to have been given by the defendant bank, in the following form:

"The Covington State Bank.

"Capital $20,000.

"Covington, Okla. 7-19-1918.

"Roxana Petroleum Company, Tulsa, Okla.

"Gentlemen:

"The officials of the Superior Refining Company of this place have just arranged with us so that we are able to guarantee to you full payment for all the oil you sell them from the Schroeder Farm, providing you give us notice at any time they allow any payments to go more than 25 days; of course, subject to our revocation by due notice to you.

"Yours truly, W. D. Wilson, Cashier. "Exhibit B."

Sometime after the petition was filed, the refining company was adjudicated a bankrupt, and this action has since been prosecuted against the defendant Covington State Bank alone.

The demurrer of defendant bank was sustained, and plaintiff filed an amended petition.

A motion to require plaintiff to make its amended petition more definite and certain was sustained, and thereafter plaintiff filed its second amended petition, containing four separate counts, or theories, upon which it relied, and set out more in detail the transaction leading up to the execution of the guaranty, and in addition had attached as exhibit thereto certain other letters of guaranty.

A demurrer to the second amended petition was sustained, and plaintiff elected to stand upon the petition, as thus amended, and judgment was entered dismissing the petition. Plaintiff appealed to this court, and in an opinion, Roxana Petroleum Co. v. Covington State Bank, 98 Okla. 266, 225 Pac. 375, the order sustaining the demurrer was reversed. The substance of the amended petition and the apparent purpose of the four counts is stated in that opinion and will not be repeated here.

Defendant bank thereafter filed its answer, in which it specifically denied that defendant bank, as a bank, ever executed either of the purported guaranties, and denies that it ever authorized W. D. Wilson, its cashier, or any other person to execute or deliver said letters, or either of them. It further pleaded that neither defendant bank nor any officer or agent thereof had any lawful power or authority to execute or deliver them, nor, in any manner or in any form, to enter into any agreement whereby defendant obligated itself to guarantee to the plaintiff the indebtedness of the refining company, or to undertake to pay any such indebtedness, past or future; that the act or acts of W. D. Wilson, its cashier, or any other officer or agent of the bank, whereby they undertook to bind or obligate the bank to pay or guarantee the payment of any indebtedness of the refining company, were and are ultra vires, null and void, and not binding on the bank. It further specifically denied that it received any benefits or consideration of any kind or character from the refining company, or from any of its business transacted with the bank arising out of said alleged guaranties, and alleged that it received no consideration therefor from the plaintiff or the refining company. These allegations and denials were made as to the first, second, and third counts of the second amended petition. As to the fourth count, the answer was a general denial.

The cause was tried to a jury, and at the close of plaintiff's evidence, a demurrer thereto was sustained as to the fourth count; and at the close of all the evidence, the trial court submitted the case to the jury, and instructed the jury, in substance, that before the jury could find for plaintiff in any sum, the jury must find from a preponderance of the evidence that defendant bank received a benefit or beneficial effect as a result of the acts of the cashier in executing and delivering the letters, and that if the jury should find, from a preponderance of the evidence, that the bank received a benefit or beneficial effect from either of the guaranties, while the same were in force and effect, then defendant bank would be liable to plaintiff for the amount of the benefit, if any, so accepted and received by it, not exceeding the amount sued for, deducting the admitted credit received from the estate of the refining company through the bankruptcy court.

The jury under these instructions returned a verdict for defendant, thus in effect finding that the bank had received no benefit or beneficial effect as a result of said guaranties. Upon this verdict, judgment was rendered for defendant bank, and from the judgment, plaintiff brings thi sappeal.

Plaintiff has set out 14 specifications of error, but we think the substantial question involved in this case is, whether plaintiff can maintain its action on the contract or contracts of guaranty set out in its petition, as direct contracts, or must it rely for its right to recover upon an implied contract of defendant bank to return or make compensation for property or money (benefits) which it received and had no right to retain. The record discloses that on June 4, 1918, W. D. Wilson, as cashier of defendant bank, wrote plaintiff as follows:

"To the Roxana Petroleum Company, Tulsa, Okla.

"Gentlemen:

"This is to inform you that this bank holds in reserve of all other accounts funds to the amount of $2,500, which is to protect the semi-monthly payments for oil due you from the Superior Refining Company of Covington, Okla., and that therefore we guarantee payments due up to that amount.

"Yours very truly, W. D. Wilson, Cashier."

And on June 7, 1918, as follows:

"Roxana Petroleum Company, Tulsa, Okla.

"Gentlemen:

"This is to advise you that we hold security from the Superior Oil Refining Company to the amount of $4,000 whereby we are able to guarantee to you payments for

oil which you deliver to the said refinery to the amount of $4,000.

"Yours very truly, W. D. Wilson, Cashier.

"This is intended to supersede and nullify the guaranty we gave you a few days ago for $2,500."

And on July 19, 1918, as follows:

"Roxana Petroleum Company, Tulsa, Okla.

"Gentlemen:

"The officials of the Superior Refining Company of this place have just arranged with us so that we are able to guarantee to you full payment for all the oil you sell them from the Schroeder Farm, providing you give us notice at any time they allow any payments to go more than 25 days. Of course, subject to our revocation by due notice to you.

"Yours truly, W. D. Wilson, Cashier."

And on April 17, 1919, Wilson, as vice president of the bank, wrote plaintiff as follows:

"Roxana Petroleum Company, Tulsa, Okla.

"Gentlemen:

"This is to notify you that we hereby withdraw our guaranty on the payment of oil bills due you from the Superior Refining Company of this place.

"Yours truly, W. D. Wilson, Vice. Pres."

This letter was received by plaintiff April 18, 1919.

It is conceded that the contract or contracts of guaranty here involved are ultra vires, as not being within the power of the cashier of the bank. Many courts hold that even though an act is ultra vires, yet, if a bank, or other corporation, receives a benefit from the transaction, there is an implied contract on the part of such corporations to return to, or compensate, the other party for the benefit so received.

Plaintiff contends for another line of decisions, which it says is a precedent for its contentions, to the effect that if a banking institution acts beyond its power, and the act is ultra vires, yet, if they receive benefits or beneficial effect, then the bank is estopped to deny its authority to so contract, and an action at law may be maintained upon the express contract. It is argued that this being true, the measure of damages which are to be received for the breach of that agreement is the amount of damage which the contract contemplates, and is not limited to the amount of benefit or beneficial interests which accrued to the corporation. It is then contended that the action being upon the contract, it is apparent, under the prior decision in this case, that the damages result

and follow as a natural consequence of the breach of the written agreement, and that the trial court erred in limiting the amount of recovery to the benefits received by the bank.

The doctrine of the "law of the case" is recognized in this court, and if the former decision in this case goes to the extent of holding that the bank is estopped from setting up the defense of ultra vires, and may be bound upon the guaranty to the full extent of loss sustained by plaintiff, then this cause must be reversed.

We do not think the former decision goes to that extent. The first count of plaintiff's petition was held good as against a general demurrer. The court said:

"On demurrer it is admitted that it (the bank) did receive benefits as alleged. Whether those benefits are sufficient to preclude the defense of ultra vires must depend upon the facts shown by the evidence."

Commissioner Logsdon, who wrote the opinion, then states that the rule (presumably the rule he was following) was announced in Crowder State Bank v. Aetna Powder Co., 41 Okla. 394, 138 Pac. 392, and quotes from that case as follows:

"Where a cashier of a bank makes a contract which is beyond his power and authority, but the bank by reason thereof secures a benefit or beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of ultra vires."

But another rule announced in that case is:

"When suit is brought on an ultra vires contract against a corporation, the contract being evidenced by a written instrument, the action is not maintained by virtue of the written instrument, but on the implied contract of the corporation to return the property delivered by virtue thereof or to place the parties in status quo. To maintain such an action is not to affirm, but to disaffirm, the original or unlawful contract."

So the court must have had in mind the rule announced there as to the principle upon which the liability is based, as therein stated; that is, that the petition herein stated a cause of action, not upon the express contract, but upon an implied contract to account for the benefits received.

The court in the Crowder Case, supra, called attention to the many shades and distinctions of the meaning of the term "ultra vires," and says that in its primary sense it means beyond the scope and power of a corporation to perform under any circumstances or for any purpose. Such we think is the act of the bank in the instant case:

"Neither the cashier nor any official or set of officials of a bank has authority to create a valid debt whereby it shall guarantee the payment of the obligation of another, or become surety thereon solely for the benefit of the debtor. This is true independently of any question of the scope of authority of any such agent, for the reason that such an attempt on the part of the bank itself would be ultra vires, illegal and void." Bank of Omega v. Wingo, etc., Co. (Ga. App.) 91 S. E. 251.

See, also, Ark. Val. Ry. Co. v. Farmers & Merchants Bank, 21 Okla. 322, 96 Pac. 765, citing Cal. Nat. Bank v. Kennedy, 167 U. S. 362, and other cases.

There are cases where an act is said to be ultra vires, not for want of power in the corporation, but for want of power in its agents or officers, or because of disregard of mere formalities which the law requires to be observed, or is an improper use of one of the enumerated powers. In such cases, the act may become binding by ratification, consent, acquiescence, or by the corporation receiving the benefit of the contract. Nat. Home Bldg. & Loan Ass'n v. Home Saving Bank, 181 Ill. 35, 72 Am. St. Rep. 245.

We think the doctrine of estoppel has never been applied in this state to a contract strictly ultra vires, that is, beyond the scope and power of the corporation to make or perform, to the extent of holding that where a corporation attempts to make such a contract, and receives any benefit thereunder, the corporation is estopped from denying the validity of the contract, as made, and is therefore liable under the contract, and may be held thereunder, and beyond the benefit actually received.

No such case has been cited in this state, and we have found none. In some of the cases cited, and, particularly, Bennett v. Gage, 74 Okla. 69, 176 Pac. 745, certain language of the court has been quoted which, standing alone, might be construed as so holding, as in that case, it was said:

"The decisions in this state as well as practically every other state are uniform in their holding that where a bank makes a guaranty and receives benefits on said transaction, it is estopped to escape liability thereon by a plea of ultra vires."

Nowhere in that case, or in any other case in this state, where a bank attempted to lend its credit, as in the instant case, has it been held that, under such a contract, the bank would be liable beyond the benefit actually received. The only case where the nature of the liability has been discussed is Crowder State Bank v. Aetna Powder Co.,

supra; and it was there shown that, to maintain the action, is not to affirm, but disaffirm the contract.

The rule that permits an action to be maintained against a corporation, where such corporation has attempted to enter into a contract which is beyond the power of the corporation, when benefits have been received and held thereunder, as being not an affirmance, but a disaffirmance, of such contract, and that the action is upon the implied contract to return or account for the benefits so received and retained, was stated in Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 24, and again in Citizens Central National Bank of N. Y. v. R. Ross Appleton, Receiver, 216 U. S. 196, 54 L. Ed. 443, a case similar in many respects to the instant case.

This rule was approved and announced as the law in this state in Crowder State Bank v. Aetna Powder Co., supra.

When the contract, as made, is disaffirmed, then the only right of recovery is upon the only contract in fact entered into, that is, the one the law implies from what was done, to wit, that the bank would on demand return the money, or compensate for the benefit it had received, and had no right to retain. Louisiana v. Wood, 102 U. S. 294; Parkersburg v. Brown, 106 U. S. 487.

Under this rule, we do not think the trial court erred in its instruction limiting the amount of recovery to the amount of benefit or beneficial effect, if any, the jury might find the defendant bank received from either of the guaranties.

Plaintiff requested 11 instructions, each one of which was refused, and exceptions properly saved. We have examined each of the instructions, so requested, and do not think the court erred in refusing them, or either of them. Some of the requested instructions are based upon the theory that defendant bank was estopped from denying the validity of the contract of guaranty, and therefore plaintiff should be allowed to recover the full amount of its claim, if the bank received any benefit whatever by reason of the transaction, regardless of the amount of such benefit.

Other requested instructions were based upon the liability of the bank, upon the theory of the fourth count of the petition, which had for its basis the alleged fraudulent acts of defendant bank. The requested instructions based on this theory were properly refused, for the reason, which is sufficient in this case, that there was no evidence of-

fered by plaintiff to support the allegation of tort, this question having been taken from the case on demurrer to the evidence, as will be hereinafter pointed out.

Plaintiff contends that the trial court sustained a demurrer to the fourth count of its petition, which it claims was error. In this regard we think plaintiff's contention cannot, under the record, be sustained. At no time after the case was remanded to the district court, did defendant file or present a demurrer to the fourth count of plaintiff's amended petition. What the record shows is, that at the close of plaintiff's evidence defendant presented a motion to require plaintiff to elect which count it would rely upon. The plaintiff objected to being required to elect at that time, and the court, after hearing the argument on that motion, and after defendant had declared its intention to present a demurrer to the evidence, announced that he would reserve his ruling on the motion to require plaintiff to elect until he had heard the argument on the demurrer to the evidence. During the argument on the motion to require plaintiff to elect, plaintiff's counsel made the following statement:

"The petition contains four counts. One of them is an action in tort. It is true that no evidence has been introduced in tort by plaintiff. * * *"

The count referred to was, and must have been, the fourth count.

The defendant's counsel dictated its demurrer to the evidence as to each count into the record, which was stated as to each "cause of action." The court, after hearing argument on the demurrer to the evidence, said:

"The Court: The court will sustain the demurrer of the defendant Covington State Bank to the fourth cause of action; the demurrer as to the other three causes of action is overruled."

We fail to see how it is possible for plaintiff under this record to understand that the court was sustaining a demurrer to the fourth count of its petition instead of its evidence as to such count. On the contrary, we think it is clear that the court sustained the demurrer to plaintiff's evidence as to the fourth count. On the face of the record, we think the contention of plaintiff in this regard is without merit.

We have examined the entire record in this case, and it appears that the plaintiff was allowed every right to which it was entitled. It appears that plaintiff delivered to the refining company, between March 20, 1919, and April 24, 1919, oil to the value of more than $16,000 for which it was never paid; that the refining company purchased from plaintiff during the time covered by the guaranty oil to the total value of $87,-681.14; that the refining company had during said time purchased oil from many other producers, in all, several hundred thousand dollars worth. It sold its products to many consumers at various places, and transacted a great deal of business with defendant bank. Plaintiff was permitted to show the refining company's average balances in defendant bank during the time, and to show defendant's average daily balances with several of its correspondent banks during said time, together with the interest received by defendant bank upon such average daily balances; in fact, was permitted to go in great detail into the business of the bank in order to show any possible benefits that it might have derived from the accounts of the refining company, though much of the business might have arisen by reason of oil purchased from other producers.

The defendant bank was allowed to show at great length the nature and character of this business, by which it claimed that it received no benefit from the business, and claimed a loss rather than a benefit. The record contains more than 1,000 pages, and a complete statement of what is shown by the evidence would require too much space. We think it sufficient to say that plaintiff was allowed every opportunity to prove the benefits it claimed defendant bank had received by reason of the guaranty, and we think plaintiff was permitted to, and did, introduce much testimony tending to prove benefits derived from other sources than the business from sale of oil by plaintiff, which was of doubtful admissibility under the rule announced in Farmers National Bank of Mayesville v. Vaughn, 89 Okla. 41, 213 Pac. 748, where, in a somewhat similar case, this court said:

"The general rule is, to render the corporation liable on account of the receipt of benefits arising out of an ultra vires contract, the benefits must have come from the other party to the contract."

We think that the case was fairly submitted to the jury under proper instructions, and the finding of the jury being in effect a finding that defendant bank had not received any benefits from or by reason of the guaranty or guaranties, the judgment should be affirmed.

132-8

BENNETT, TEEHEE, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered .

Note.—See 14a C. J. 585, §2529; 7 R., C. L. p. 678; 2 R. C. L. Supp. p. 432; 4 R. C. L. Supp. p. 494; 5 R. C. L. Supp. 461; 6 R. C. L. Supp. p. 457.