## FARMERS' NAT. BANK OF MAYSVILLE v. VAUGHN.

No. 10768—Opinion Filed March 13, 1923.

(Syllabus.)

**1. Trial—Directing Verdict—Effect of Motion.**

The question presented to a trial court on motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith.

**2. Corporations—Ultra Vires Contract—Liability.**

The general rule is, to render the corporation liable on account of the receipt of benefits arising out of an ultra vires contract, the benefits must have come from the other party to the contract.

**3. Same—Liability on Guaranty.**

Record examined, and held, the trial court erred in directing a verdict for the plaintiff and against the defendant.

Error from District Court, Garvin County; F. B. Swank, Judge.

Action by T. A. Vaughn against the Farmers' National Bank of Maysville on contract of guaranty. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

W. L. Farmer, J. R. Cottingham, and S. W. Hayes, for plaintiff in error.

Everest, Vaught & Brewer, for defendant in error.

McNEILL, J. This action was commenced by T. A. Vaughn against the Farmers' National Bank of Maysville to recover an amount paid by plaintiff in perfecting his title to certain real estate situated in the town of Maysville, on a contract of guaranty, executed by the bank through its president and secretary.

The defendant bank answered, pleading that the contract was ultra vires and without consideration. Plaintiff replied, pleading that the property was the property of the Farmers' National Bank of Maysville and the consideration was paid to the Farmers' National Bank, and it received the proceeds from the transaction, and is estopped to allege that the contract is ultra vires.

The material facts are substantially as follows: On January 26, 1911, F. C. Cook conveyed to the First Bank of Maysville the real estate in question in payment of certain indebtedness owing by him to the bank. Vaughn was a director and stockholder in said bank. Shortly thereafter Cook was declared a bankrupt, and the trustee in bankruptcy instituted suit against the bank to recover said property, alleging that the same constituted an illegal preference in favor of the bank against the other creditors. Judgment was rendered declaring the conveyance an illegal preference. The bank appealed from said judgment to this court. Pending the appeal, and on November 1, 1912, the First Bank of Maysville executed a certificate of voluntary liquidation and ceased to do business. On that date the Farmers' National Bank, the plaintiff in error, was organized and purchased certain portions of the assets of the First Bank, including the buildings, fixtures, and numerous other assets, and it is contended by Vaughn that the Farmers' National Bank purchased all the assets of the First Bank of Maysville, and the same included the property he purchased. Vaughn was a stockholder in the Farmers' National

Bank, and also in the First Bank of Maysville.

The Farmers' National Bank, however, contends the real estate in question was not taken over by the Farmers' National Bank. This was a disputed question of fact on the trial of this case. On the 5th day of December, 1912, the First Bank of Maysville conveyed the real estate in question to T. A. Vaughn by warranty deed for a recited consideration of $3,000. On said day Vaughn executed a check in favor of the First Bank of Maysville in the sum of $2,475 upon the Farmers' National Bank in payment for said property, and gave an automobile valued at practically $325. At the same time, the president and secretary of the Farmers' National Bank executed the written guaranty, the basis of this suit. The guaranty is substantially as follows:

"Whereas, the Farmers' National Bank of Maysville in taking over the assets of the First Bank of Maysville did assume all the liabilities of said First Bank of Maysville, and

"Whereas, the First Bank of Maysville has this day sold and conveyed to Vaughn * * * (the property in question) upon which there is a suit pending in bankruptcy against F. C. Cook, a former owner of said lot.

"It is hereby understood and agreed that the Farmers' National Bank of Maysville will protect said T. A. Vaughn against said suit and hold him harmless against any loss from said suit."

This was signed "Farmers' National Bank by J. R. Utterback, President. Attest W. W. Powers, Secretary."

Vaughn contended and pleaded that the property in question belonged to the Farmers' National Bank, although the record title was in the First Bank of Maysville, and he in fact purchased the property from the Farmers' National Bank. The Supreme Court affirmed the decision of the lower court and set aside the conveyance from Cook to the First Bank, and in order to protect his title to said property Vaughn paid to the trustee in bankruptcy approximately $2,400. This suit was instituted to recover that amount.

Upon trial of the case to the jury, after the introduction of the evidence of both plaintiff and defendant, the trial court, upon motion of the plaintiff, Vaughn, directed the jury to return a verdict for the plaintiff and against the defendant for the full amount sued for. The verdict was returned as directed and judgment entered thereon,

and this appeal regularly prosecuted to this court.

For reversal, it is contended the trial court erred in directing a verdict in favor of the plaintiff and against the defendant. A consideration of this question involves two propositions. First, Was the Farmers' National Bank the owner of said land, and did the Farmers' National Bank sell the same to T. A. Vaughn? This was a disputed question of fact. The evidence upon this proposition is not clear or positive. There is evidence to the effect that the records of the Farmers' National Bank disclosed that it took over the assets of the First Bank of Maysville and was to pay the stockholders book value for their stock, and this property was considered in determining the book value of the stock, and the guaranty contract recites that the Farmers' National Bank assumed all liabilities. There is evidence that contradicts this proposition, to wit: The property was in the name of the First Bank of Maysville and the check made by Vaughn was made payable to the First Bank of Maysville, deposited in the Farmers' National Bank in the name of the First Bank of Maysville. This money and other money was very shortly thereafter paid to the stockholders of the First Bank of Maysville, a portion of which was paid to Vaughn, or at least that is the inference that can be drawn from the record. There is evidence that after the organization of the Farmers' National Bank of Maysville up to the time of the sale of the property to Vaughn, the Farmers' National Bank had collected the rents on this building. The trial court in his instruction to the jury must have concluded the property was not the property of the Farmers' National Bank, but belonged to the First Bank of Maysville, for in giving his instruction he advised the jury that the contract of guaranty was an ultra vires contract. If the property was the property of the Farmers' National Bank, the contract would not be ultra vires. The court advised the jury that the defendant bank had received the profits or benefits from the sale, or at least a portion of the same, and the evidence upon that point being uncontradicted, the plaintiff was entitled to judgment. In this we think the court erred. Whether the Farmers' National Bank received the consideration paid by Vaughn was a disputed question of fact as heretofore stated. The check was made payable to the First Bank of Maysville and deposited to the credit of the First Bank of Maysville, and was thereafter paid to the stockholders of said First Bank of

Maysville. It cannot be said the evidence was uncontradicted that the Farmers' National Bank received the proceeds from the sale.

In regard to the automobile that was given as part payment for the property, it is not clear whether the Farmers' National Bank paid the First Bank of Maysville for the same, nor is it clear exactly how that was handled. It is uncontradicted, however, that prior to the time of the sale of the property to Vaughn the Farmers' National Bank received rental for the premises. The question is, under this state of the facts, Did the trial court err in directing the verdict for the plaintiff?

This court has announced the rule as follows:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith." Stevens v. Oklahoma Automobile Co., 78 Okla. 126, 188 Pac. 1075; Harrison v. Corry Pharmacy, 78 Okla. 127, 188 Pac. 1076.

The evidence on behalf of the defendant tends to show that the proceeds of the sale between the First Bank and Vaughn were received by the First Bank and disbursed to the stockholders. The evidence regarding the automobile that was given as part of the consideration is not conclusive, and it might be inferred that the Farmers' National Bank received the same, but credited the First Bank with the value thereof. When we apply the rule above announced to this state of facts, it cannot be said there was no question of fact to be submitted to the jury.

It is, however, contended that the bank had received some rentals from the tenant of the property before the property was sold to Vaughn. If we admit this as true, would this fact be sufficient to estop the bank from claiming the contract was ultra vires.

The rule stated in 7 R. C. L. 679, is as follows:

"To render the corporation liable on account of the receipt of benefits arising out of an ultra vires contract, the benefits must have come from the other party to the contract."

By application of this rule, the fact would not amount to an estoppel, if the same was an ultra vires contract. It might be a circumstance to prove the Farmers' National Bank owned the property and was collecting the rents.

The evidence presented two separate questions of fact: First, Was the property transferred to the plaintiff, Vaughn, the property of the Farmers' National Bank? Second, Did the Farmers' National Bank receive the proceeds of the sale of the property when made to Vaughn? It cannot be said that the evidence on behalf of the plaintiff established these facts or either of them to such a degree of certainty that men of ordinary intelligence might not draw different conclusions therefrom, and, therefore, it was error for the court to sustain a motion to direct the verdict. See Besse v. Morgan, 84 Okla. 203, 202 Pac. 1012.

For the reasons stated, the judgment of the court is reversed, and remanded, with directions to set aside the judgment and grant the plaintiff in error a new trial.

JOHNSON, V. C. J., and KENNAMER, NICHOLSON, and BRANSON, JJ., concur.