## ATLAS LIFE INS. CO. v. HOLT, Adm'x, et al.

No. 24543.    Oct. 20, 1936.

Monnet & Savage, for plaintiff in error.

F. V. Westhafer and John R. Woodard, for defendants in error.

BUSBY, J. This action was instituted as an action in equity on January 7, 1932, in the court of common pleas of Tulsa county by the Atlas Life Insurance Company, a corporation, as plaintiff, against Sarah Margaret Holt, administratrix of the estate of Sidney A. Holt, deceased, and the Exchange National Company, as defendants.

The plaintiff sought to cancel a policy of life insurance which had been issued by it to Sidney A. Holt, as insured, on the 27th day of March, 1930, and in which the estate of Sidney A. Holt was named as the beneficiary. The Exchange National Company was named as a party defendant by reason of an interest acquired by it in the policy through assignment to it for the purpose of securing a debt due from Sidney A. Holt. Sidney A. Holt had died on November 9, 1931. Plaintiff's asserted right to a cancellation of the policy was alleged to exist by reason of fraud claimed to have been practiced on it by the insured in procuring the policy of insurance. It asserted a right to

maintain an equitable action to cancel the policy on the theory that there was in the policy a provision that the same should be noncontestable after the expiration of two years from the date the policy was issued, and that if it should wait to set up the fraud as a defense to a legal action on the policy, the defense would be barred by the noncontestability clause.

The defendants answered denying the fraud, and without claiming the benefit of noncontestability clause incorporated in their answer a cross-demand for judgment on the policy in the sum of $2,000.

A jury was impaneled in the trial court for the purpose of trying the case. At the close of the evidence introduced by the respective parties, each of the parties separately moved for a directed verdict. The trial court sustained the motion of defendants and directed a verdict in their favor and against the plaintiff for the sum of $2,000, with interest, representing the amount due on the insurance policy.

The insurance company brings the case to this court for review asserting that the trial court committed error in directing a verdict against it.

Before reviewing the evidence for the purpose of determining the propriety of the action taken by the trial court, it is appropriate that we recognize certain rules of law conceded by the parties to be applicable in this case. It is agreed in the briefs that:

"The burden rested upon the plaintiff, in addition to proving misstatements and misrepresentations in the application, to prove that the misrepresentations were material to the risk, and that they were made willfully and in bad faith with the intent on the part of the insured to deceive it." See New York Life Ins. Co. v. Stagg, 95 Okla. 252, 219 P. 362.

The parties are also in accord that the following established rules of law are applicable to this case:

"The question presented on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of a party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it. there is enough evidence to reasonably sustain a verdict, should the jury find in accordance therewith." Citizens Bank of Millerton v. Beeson, 104 Okla. 293, 231 P. 844; Danciger v. Isaacs, 82 Okla 263, 200 P. 164; Farmers National Bank v. Vaughn, 89 Okla. 41, 213 P. 748.

"Where the evidence is conflicting, and the court is asked to direct a verdict, all of the evidence and inferences in conflict with the evidence of the party against whom such motion is leveled must be eliminated and disregarded, leaving for consideration the evidence only which is favorable to the party against whom such direction is requested." Eastman National Bank v. Hertzler, 100 Okla. 82, 229 P. 249; Hoyt v. St. L.-S. F. Ry. Co., 153 Okla. 7, 4 P. (2d) 747.

The fact that both of the parties to this action requested a favorable instructed verdict does not render the foregoing rules inapplicable. Neither of the parties is entitled to a directed verdict in a case in which the issues of fact should be decided by a jury if there is a disputed and decisive question of fact on which conflicting evidence has been introduced sufficient to warrant a verdict for either party. Farmers National Bank of Tecumseh v. McCall, 25 Okla. 600, 106 P. 866; Taylor v. Wooden, 30 Okla. 6, 118 P. 372, 36 L. R. A. (N. S.) 1018; Hogan v. Milburn, 44 Okla. 641, 146 P. 5; Mid-Continent Life Ins. Co. v. Tackett, 149 Okla. 147, 299 P. 862.

In view of the conceded applicability of the foregoing rules to the case at bar, we are charged with the duty of reviewing the evidence for the purpose of determining whether there is any evidence in the record which would have justified a verdict and decision in favor of the insurance company.

Sidney A. Holt, deceased, signed the application for the insurance policy herein involved on the 23rd day of March, 1930. In the application and in response to interrogatories therein contained, it was stated, in substance, that the insured had not consulted a physician or surgeon in the previous ten years and that he had never had or been advised to have a surgical operation. The basis of the insurance company's defense to a claim on the policy is that these answers were false and that in truth and in fact the insured had consulted a physician within the last ten years and had also undergone a surgical operation. It is conceded, however, that the statements contained in the application were representations as distinguished from warranties and that the burden rested upon the insurance company to show, not only that they were false, but that they were material to the risk and that they were made willfully and in bad faith with the intent on the part of the insured to deceive the insurance company.

The consultation with or attendance by a physician contemplated by a general question in an application for life insurance refers to consultation or attendance for severe ailments or illness such as would affect the con-

tract of insurance. The question does not contemplate an affirmative answer in case of consultation or attendance for slight, temporary, or immaterial illness. See Mutual Life Ins. Co. of N. Y. v. Morgan, 39 Okla. 205, 135 P. 279; see, also, Sovereign Camp W. O. W. v. Brown, 94 Okla. 277, 221 P. 1017; see, also, Fishbeck v. N. Y. Life Ins. Co., 179 Wis. 369, 192 N. W. 170, which involved an Oklahoma policy.

Upon similar principles it seems clear that a general question with reference to surgical operations also contemplates an affirmative answer only in cases where the surgical operation was of a major or serious character as distinguished from a minor operation for an immaterial ailment. The parties to this litigation do not contend otherwise.

In 1921 the deceased had a tumor of some character on the left side of his neck. He then resided in the state of Arkansas. This growth or tumor was removed by a surgical operation performed by a doctor who resided in that state. We are not favored with the testimony of this doctor. Shortly after the performance of the operation the deceased moved to the city of Tulsa. In 1921 or 1922 (the evidence being somewhat uncertain as to the year) a lump appeared at the point where the scar from the former operation existed. The deceased consulted a Tulsa physician about the matter, who advised radium treatments. Under the treatment the lump disappeared. According to the medical testimony introduced in this case, tumors or lumps of the character herein involved may be either malignant or nonmalignant. If they are nonmalignant, they are not regarded as serious. If they are malignant, they are known either as sarcoma or cancer, and unless cured they will ultimately result in death, unless, of course, death from other cause occurs during the progress of the development of the cancerous growth. Surgical and radium treatments are used by the medical profession in connection with both types of tumor (malignant and nonmalignant). The treatment administered in this case was not particularly significant for the purpose of determining the type of growth involved. Apparently in many cases it is not possible to distinguish between malignant and nonmalignant growths without the removal of a piece of the affected area for analysis. The Tulsa physician who testified in this case did not make such an examination, and according to his testimony, it appears that he did not at the time he administered the treatments know the precise character of the insured's difficulty, that is, whether the tumorous growth involved was malignant or non-

malignant. Since the same treatment should be employed in either event, he merely administered the proper treatment.

The medical testimony also discloses that even if a tumor is malignant, it is regarded by the medical profession to have been completely cured at the expiration of five years subsequent to the date of the completion of treatment. In other words, if the difficulty does not manifest itself upon the patient within the five-year period, its subsequent recurrence is rare and unusual. At the expiration of five years from the date of the completion of the treatments in this case, there had been no recurrence of the tumorous condition. In fact, approximately seven or eight years elapsed between that time and the time the policy involved in this case was applied for.

It does not appear from the evidence just how far the deceased was informed by his physician concerning the nature of his ailment. It is quite possible, and even probable, that he regarded his operation and the subsequent radium treatment by the physician, which had occurred years previous to his application for the policy, as a surgical operation and attendance by a physician for an inconsequential physical ailment. Or he may in good faith have believed the matter to be immaterial from an insurance standpoint by reason of the lapse of time since the treatment.

Considering only the evidence thus far reviewed, we are strongly impressed with the argument of defendant that when a presumption of good faith is indulged in connection with this evidence, it would be insufficient to warrant the judgment in favor of the insurance company, even though negative answers were given to the questions propounded. However, we are precluded from adopting that view in this case by reason of the presence in the record of other evidence favorable to the insurance company.

Unquestionably an operation for malignant tumor (either cancer or sarcoma), known and recognized as such, should be revealed to the agent or doctor of the insurance company in answer to interrogatories such as are contained in the application and medical report now before us. The tumorous condition of the deceased in 1921 may or may not have been malignant. If it was malignant, its malignant character may or may not have been known to the deceased. The presumption would be that he acted in good faith in the matter. But in this case a doctor examined the deceased in connection with the application for insurance at the time the

policy was applied for, and according to the doctor's testimony he saw the scar on the neck of the deceased and made a specific inquiry in connection therewith as to its cause and origin. The deceased, so the doctor says, advised him that the scar was caused by an old operation for carbuncle. This evidence, if true, is some indication that the deceased knew or believed that he had suffered from an ailment which may have been serious in character and that he might have intended to mislead the insurance company.

The evidence of the doctor is disputed, but the jury might have believed it. It is also pointed out by the defendant in connection with this evidence that the doctor did not insert in the medical report any notation concerning the operation for carbuncle. The doctor's explanation of his failure in this respect is that such an operation is of a minor character and is not in insurance matters contemplated by the questions propounded. The explanation is rational and in keeping with the general rule of law excusing a failure to reveal minor ailments or operations. It is a demonstration that the practical conduct of the insurance business is in keeping with the view adopted by the courts concerning the character of surgical operations and medical attendance intended to be revealed in connection with applications for insurance. It does not destroy the doctor's testimony as a matter of law.

It is our judgment that this testimony of the medical examiner for the insurance company concerning a specific inquiry and a false answer thereto was sufficient indication of guilty knowledge to entitle the insurance company to have the disputed question of fact decided by a jury. The insurance company does not claim that it is entitled to more. In other words, it is conceded that the evidence is ample and sufficient to warrant a verdict and judgment for the defendants herein, if the jury should see fit to take that view of the case.

We have, in reviewing the evidence in this case and announcing our conclusions, carefully confined ourselves to a consideration of the facts as they existed at the time the insurance was applied for and the policy issued. The insured died almost two years after this policy was issued. The cause of his death is not certain from the medical testimony produced, although it was possibly caused by a recurrence of sarcoma. However, the tumorous growth, if any, was not located. In view of subsequent developments, the doctors who testified were inclined to the view

that the tumor with which the assured was afflicted in 1921 was probably malignant. The subsequent developments and conclusions, however, would have no bearing upon the good or bad faith of the insured in applying for the insurance.

As previously mentioned, the parties to this appeal agree that the directed verdict was not justified if there was any evidence which would have warranted the jury in returning a verdict for the insurance company. The rules of law thus applied are applicable to actions at law as distinguished from suits in equity. Their purpose is to protect and preserve the rights of litigants to a trial by jury in an action at law. They have no application to a suit in equity in which the ultimate power to decide the disputed facts rests with the court as distinguished from the jury. In such cases the verdict of the jury being merely advisory, the court may, either on motion of a party to the action, or on its own motion, discharge the jury from further consideration of the case and proceed to determine the questions of fact. In order to disturb a judgment on disputed questions of fact in an equity case, it is essential that the judgment be against the clear weight of the evidence. See Walden v. Potts, 97 Okla. 24, 222 P. 549; Crawford v. Hemmingway, 116 Okla. 192, 224 P. 198; Bancroft Prac. p. 5842; see, also Rosenbaum v. Buchheit, 73 Colo. 260, 215 P. 131.

We have applied the legal rules in this case because they are conceded to be applicable hereto, and in view of the further fact that there are respectable authorities supporting the concession. It has been held by some authorities that where an action is filed in equity to cancel an insurance policy on the grounds that an existing legal defense might be lost through delay by reason of an incontestability clause in a policy and where the beneficiary in the policy files a cross-petition which does not set up the incontestability clause, the case should be treated as transformed from one of equity to one of law in order that the jurisdiction of equity may not be invoked for the purpose of depriving a policyholder or his beneficiary from obtaining a trial by jury on disputed questions of fact. See Northern Life Ins. Co. v. Walker (Wash.) 212 P. 277.

We deem it unnecessary to expressly adopt or approve this view, but, since it is apparently the theory upon which the parties to this action have proceeded, we deem it appropriate to accede to their view for the purpose of determining their rights. We have

therefore treated this case as an action at law.

The cause is reversed and remanded for a new trial.

McNEILL, C. J., and WELCH, PHELPS, and GIBSON, JJ., concur.