REPUBLIC LIFE INS. CO. v. BURCH.

No. 32780.   Nov. 25, 1947.

*187 P. 2d 242.*

A. L. Morrison and John Morrison both of El Reno, and George F. Short and Welcome D. Pierson, both of Oklahoma City, for plaintiff in error.

Milton B. Cope, of El Reno, for defendant in error.

WELCH, J. This is an action by Republic Life Insurance Company against Tessie P. Burch for rescission· of its policy of insurance on the life of Clyde W. Burch, deceased, husband of defendant.

Plaintiff's petition alleged that the policy in question was issued on June 21, 1943; that the insured died on September 20, 1944, and that defendant had filed a claim for the payment of the principal amount of the policy. Plaintiff further alleged that the policy was issued upon an application in writing made by Clyde W. Burch, deceased, in which he stated that he had never suffered from palpitation or any disease of the heart or from high blood pressure or any disease of the arteries; that, in fact, the said Clyde W. Burch had suffered from hardening of the arteries for about five years and from coronary heart disease from January, 1942, which facts he well knew at the time he made such application and which facts he fraudulently concealed from the plaintiff; that had plaintiff known these facts it would not have issued the said policy; that the insured made further misrepresentations in his application in that he stated therein that he had last consulted a doctor in 1941, and that the nature of his illness was sciatic rheumatism.

The insurance policy, together with the written application attached thereto, was attached to the petition.

The defendant in answer admitted that the deceased signed the application attached to the policy and alleged that the deceased acted in good faith and wholly without knowledge of any of the physical infirmities or diseases referred to in plaintiff's petition. In cross-petition defendant prayed judgment for the principal amount of the policy and interest.

From a judgment in favor of defendant and cross-petitioner, plaintiff appeals. All assignments of error are presented under one proposition. It is contended that the judgment is not sustained by the evidence and is contrary to law in that it was shown by the evidence that the insured in bad faith made willfully false and fraudulent and misleading statements in his application for insurance.

The policy involved provides that in the absence of fraud, statements in the application for insurance are to be deemed representations and not warranties. It is correctly suggested by the plaintiff that the general rule of law applicable in this case is that as stated in Atlas Life Insurance Co. v.

Holt, 178 Okla. 28, 61 P. 2d 719, in the first paragraph of the syllabus as follows:

"Where statements made by the insured in an application for insurance are representations as distinguished from warranties, in order for misrepresentations made by the insured in such application to avail the insurer as a defense, it must show that the statements were not only not true, but that they were willfully false, fraudulent, misleading and made in bad faith. New York Life Ins. Co. v. Stagg, 95 Okla. 252, 219 P. 362."

The application for insurance, shown to have been signed by Clyde W. Burch and dated June 9, 1943, contained the following questions and answers:

"10. When did you last consult a physician and for what? A. 1941.

Name of Physician: A. J. T. Riley.

Address of Physician: A. El Reno.

Illness: A. Sciatic Rheumatism.

Duration of Illness: A. In bed 3 days.

Have you every consulted such physician at any other time. A. No."

"14. Have you ever had any of the following diseases or symptoms (Each question must be read and answered 'Yes' or 'No.'

Palpitation or any disease of the heart? A. No.

High Blood Pressure or any disease of the arteries? A. No.

Neuritis, Neuralgia or Sciatica? A. Yes.

In regard to those answered "Yes" give full particulars below:

Disease or Injury? A. Sciatica

Date? A. 1941

Number of Attacks? A. 1

Duration? A. 3 days

Severity? A. Mild

Results? A. No recurrence

Name and Address of Attending Physician?

A. J. T. Riley, El Reno."

In the written statement of Doctor Riley bearing date of September, 1944, and submitted with the beneficiary's proof of loss, the following questions and answers appear:

"When were you first consulted by deceased or by any relative or friend for the condition which either directly or indirectly caused death?

Date: Dec. 1941. Flu

By Whom: Patient (deceased)

"4. Were you deceased's medical attendant or adviser before last illness or infirmity? If so, when and for what disease. Yes, Jan. 1942, Coronary Alesion

"6. Date and place of Death?

Date. Sept. 20, 1944

Place: El Reno, Okla.

"8. What was the immediate cause of death? Coronary Occlusion

"9. How long in your opinion did deceased suffer from this disease or impairment? About 2½ years.

"10. What were the contributory causes of death? (Give as nearly as you can, by dates, the duration of each)

Disease or Impairment? Hypertension.

Duration? Probable 5 years.

Disease or Impairment? Arterio Sclerosis.

Duration? Probably 5 years."

At the trial of this cause the doctor testified that he treated Burch for coronary occlusion in January, 1942, that he told the parties he was treating him for neuritis and influenza and did not mention a heart or arterial condition; that he gave medication without explaining its purpose and gave as his only instruction that the patient stay in bed and not overdo.

Mrs. Burch testified that Burch was an employee of a railroad company and had been for about 35 years; that he was a conductor at the time of his death which occurred in the home on September 20, 1944; that he had been working all the time and was physically active up to the time of his death; that the day before his death he had gone from his home in El Reno to Oklahoma City and had spent the day in window-shopping and attending two shows, and had made no complaint about not being well. Mrs. Burch testified that Doctor Riley treated the deceased upon two occasions—once in the winter of 1941, and the last time in the spring or summer of 1942, but she was not sure about the time of year; that the doctor first treated him for rheumatism in his right leg and he was ill for about three days; that on the other occasion the doctor gave him some medicine and told him he had influenza; that he was ill at the time for about 16 days.

There is no evidence that the deceased had been advised that he had a coronary disease or high blood pressure or arterio sclerosis at the time he made his application for insurance. There is no evidence of change of employment or any change in the course of conduct of the deceased at any time either before the application or after, from which it could reasonably be inferred that the deceased had knowledge that he was suffering from any internal physical impairment. The fact that the insured in the application for insurance made in June, 1943, admitted treatment by his physician in December, 1941, for neuritis, neuralgia or sciatica, is some indication that he sought to make full disclosure of every ailment of which he had knowledge.

There can be no doubt that the insured received treatment by his physician in January, 1942, but under all the circumstances as shown by the evidence his failure to report this treatment appears to be a mere inadvertence and the statement in his application made in June, 1943, and that he had not consulted his physician at any other time except for the sciatic condition in 1941 does not appear to be willful misrepresentations made in bad faith. As was said in the body of the opinion in New York Life Ins. Co. v. Stagg, 95 Okla. 252, 219 P. 362, quoting from Penn Mutual Life Ins. Co. v. Bank & T. Co., 72 Fed. 413, 19 C.C.A. 286:

"There is a natural, and perhaps legal presumption of the continuance of a state of knowledge, . . . But the presumption is not conclusive. Men do forget entirely a fact previously known to them, and they do forget it temporarily, so that they may make an untrue statement inadvertently about it, though recently known to them. The possibility or probability of their doing so depends on the character of the fact in question, and all the circumstances under which the misstatement concerning it is made. There is also a presumption that a man does not make a fraudulent misstatement, but men frequently do nevertheless make such statements; and the question whether the presumption is overcome depends on the evidential weight to be given to all the circumstances, including possible motive, together with the positive evidence of witnesses. . . ."

The fact that the visit of the doctor in January, 1942, followed so closely in point of time the reported visit in December, 1941, together with the report of the doctor to the patient at the time that his ailment was influenza, does not indicate that the insured had an ulterior motive in failing to report this last visit. Ordinarily, influenza would not be considered by a layman to be of any serious consequence or to have any effect upon his general health pattern or to be of any permanent significance. Under all the circumstances, it appears most probable that the insured's failure to report this last visit by his physician was a mere oversight.

A finding herein that the statements made by the insured about his heart and arterial condition were made in good faith, and without knowledge of his true condition, and that the untrue statement

about times of consultation with his physician was made inadvertently and not in bad faith, is supported by the evidence and not against the clear weight thereof, and under the rule first above mentioned the defendant was entitled to prevail.

The judgment is affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, CORN, GIBSON, ARNOLD, and LUTTRELL, JJ., concur.