\*OKLHOMA CITY NAT. BANK *et al.* v. EZZARD.

No. 6832.   Opinion Filed June 13, 1916.

Rehearing Denied July 25, 1916.

(159 Pac. 267.)

1.   **BANKS AND BANKING—National Banks—Liquidation—Actions.** Where a national bank is placed in voluntary liquidation and a liquidation agent appointed, the corporate existence of the bank continues until the duties of the liquidating agent have been performed and the affairs and business of the bank completely settled, and during this time the bank is capable of suing and being sued in its corporate capacity, and creditors have the right to enforce their claims against the bank or determine the validity thereof by suit in the proper court.

2.   **PROCESS—County to Which Issued.** Where an action is rightfully commenced in any county, summons may issue to any other county and be there served upon one or more of the defendants.

3.   **GUARANTY—Requisites—Notice to Guarantor.** Where a guaranty is made in response to an offer by the guarantee, its de-

---

\*Appealed to the Supreme Court of the United States.

livery to the guarantee completes the contract, and notice of its acceptance by the guarantee and of an intention to act thereunder is not necessary.

4.    **BANKS AND BANKING—National Banks—Liabilities.** A national bank which, in pursuance of an agreement with its debtor that he will apply the proceeds of a loan upon his indebtedness to the bank, guarantees the payment of said loan at maturity, is liable to the lender for the amount received by it in the execution of its agreement, even though such guaranty be beyond its powers under the National Banking Act (Act Cong. June 3, 1864, c. 106, 13 Stat. 99).

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by Mollie Ezzard against the Oklahoma City National Bank and another. Judgment for plaint.ff, and defendants bring error. Affirmed.

*Wilson & Tomerlin,* for plaintiffs in error.

*Harry R. Winn* and *Asp, Snyder, Owen & Lybrand,* for defendant in error.

HARDY, J. Mollie Ezzard, as plaintiff, commenced this action against the Oklahoma City National Bank and Don Lacy, its liquidating agent, to recover the sum of $2,000, with 10 per cent. interest thereon and 10 per cent. attorney's fees, which had been loaned by her to I. M. Holcomb, and which it was alleged the bank by its contract of guaranty had agreed to take up at maturity if not paid by him. Summons was served upon the president of the bank in Oklahoma county, and upon liquidating agent in Carter county. The bank filed motion to quash the summons and service thereof for the reason that said bank had been, by vote of its directors, placed in voluntary liquidation, with a duly appointed liquidating agent, and for that reason service of summons could not be had

upon it in its corporate capacity, but should be had upon its liquidating agent. Defendant Lacy filed motion to quash summons and service upon him, for the reason that service could not be had upon him in Carter county. Both motions were overruled, and error is urged upon the order of the court made thereon.

The mere fact that the directors had voted to place the bank in voluntary liquidation, and that a liquidating agent had been appointed, did not terminate the corporate existence of the bank. The powers and duties of the liquidating agent under the law were to take charge of the assets of the bank, to wind up its business, pay its liabilities, and, if necessary, enforce the liability of its stockholders for all its "contracts, debts and agreements," and the existence of the corporation continues during this time and until the duties of its liquidating agent have been performed and its affairs and business completely settled, and pending final settlement of these matters the bank is capable of suing and being sued in its corporate capacity, and creditors have the right to enforce their claims against the bank or determine the validity thereof by suit in the proper court. *Chemical National Bank v. Hartford Dep. Co.,* 161 U. S. 1, 16 Sup. Ct. 439, 40 L. Ed. 595. Summons was properly served upon the bank in Oklahoma county, and, the court in which suit was filed having acquired jurisdiction of the cause, summons might properly issue to Carter county and be there served on defendant Lacy. Section 4706, Rev. Laws 1910.

It is urged that the alleged guaranty is at most an offer unaccepted, without consideration recited, to guarantee the payment of Holcomb's note in the event of his default, and, because plaintiff gave the bank no notice of her acceptance of the offer, thereby there was no meeting of

the minds, and the offer is not binding upon the bank, and in support of this contention counsel cite section 1031, Rev. Laws 1910, which declares that a mere offer of guaranty is not binding until notice of its acceptance is communicated by the guarantee to the guarantor, and also cite the case of *Smith v. Thesmann*, 20 Okla. 133, 93 Pac. 977, 15 Ann. Cas. 1161, and authorities from other jurisd ctions to the same effect. The record discloses the fact, which is undisputed, that Holcomb, learning that plaintiff had some money which she was willing to loan, sought to borrow same, and was told by plaintiff she would loan him the money if the bank would guarantee to take up the note at the end of the time in the event he did not. Holcomb communicated this offer to the bank, and C. H. Everest, vice president of the bank, apparently after consultation with the board of directors, wrote the letter of guaranty upon which plaintiff commenced this action, and delivered same to Holcomb, which was by Holcomb delivered to plaintiff and the loan consummated and the money paid to the bank. Upon this state of facts the statute and the authorities cited do not apply, but a different rule would govern. Where a person applies to another for a loan, and is told by that person the loan will be made upon condition that said loan be guaranteed by a third person, and the offer is communicated to such third person, who thereupon executes a guaranty of the debt, which is delivered to the guarantee and the loan made upon the strength thereof, no notice of acceptance is necessary, and the guarantor cannot escape liability because of want of such notice, for the execution of the guaranty by him was an acceptance upon his part of an offer to make the loan upon the execution of the guaranty by him, and under these circumstances there is a complete meeting of the minds of the parties. Childs, Sur. &

Guar., p. 29; Brandt, Sur. & Guar. (3d Ed.) sec. 213; Pingrey, Sur. & Guar., sec. 348; *Davis v. Wells Fargo & Co.,* 104 U. S. 159, 26 L. Ed. 686.

In addition to the reasons stated, the purpose of Holcomb in making the loan was to obtain money to apply on his indebtedness at the bank. It appears that the bank would only extend his indebtedness for 90 days at a time, while he could procure the loan for a year. When the money was received it is undisputed that a portion thereof was paid to the bank in pursuance of a previous agreement, and applied on Holcomb's indebtedness, and it was to enable Holcomb to procure the money with which to reduce the amount owing by him to the bank that said guaranty was executed. There was thus a valuable consideration moving to the bank which was sufficient to uphold said guaranty if otherwise legal.

The contract of guaranty is said to be *ultra vires* and not binding upon the bank or its liquidating agent. The trial court does not appear to have rendered judgment upon the contract, but upon the liability implied by law from the circumstances of the transaction. While plaintiff sued upon the contract, she also prayed judgment upon the liability imposed by law in the event said contract was held to be illegal. Instead of rendering judgment for the amount of the note with 10 per cent. interest and 10 per cent. attorney's fees, according to its terms, as he would be authorized to do in the event judgment was rendered upon the contract of guaranty, the court rendered judgment for $2,000, the amount of the loan, with 6 per cent. interest thereon from March 28, 1911, the date of said loan. Plaintiff moved for judgment for the amount due on the note according to its terms, notwithstanding the verdict, which motion was overruled. In view of these

facts, a discussion of the question urged becomes unimportant.

It is admitted that the bank received $1,000 of the sum borrowed from plaintiff, and in effect conceded that judgment might properly go against defendants for that amount, but it is urged that the court erred in directing a verdict for plaintiff in the sum of $2,000 because there was no competent evidence to show that the bank received this amount. The witness Holcomb testified that plaintiff gave him a check for the amount loaned, which he took to the American National Bank and cashed and then took the money to the defendant bank and paid said entire sum to said bank to be applied on his indebtedness. His evidence to this effect is direct and positive, and the statement repeated. The bank introduced its note teller, who testified that a credit of $1,000 was applied on certain notes owing by Holcomb, and that a new note was executed for the balance. C. H. Everest, vice president of the bank, testified that whatever amount was paid by Holcomb was paid to him, and by him turned over to the note teller; that he did not know whether Holcomb had paid any other amount than had been credited upon the books; that he had searched the records of the bank and was unable to f nd any record of any other sum which had been applied on Holcomb's indebtedness. Upon this testimony the court submitted to the jury the question as to how much of said sum was received by the bank to be applied on its indebtedness, and directed a verdict for plaint'ff in the sum of $2,000. The jury answered that the bank had received the sum of $2,000. Defendants complain of the action of the court in submitting this special interrogatory to the jury in connection with an instruction to return a verdict for plaintiff in the sum of $2,000, and in refusing to give certain special instructions requested.

There was practically no dispute in the evidence. The bank held certain collateral as security for Holcomb's indebtedness, and agreed with him that this collateral would be released and delivered to plaintiff, and the bank would guarantee the loan and the proceeds thereof shoul.1 be applied on his indebtedness. With this understanding the collateral was released, the guaranty executed, and both delivered to plaintiff, and the money secured and paid to the bank. Everest does not deny that the sum of $2,000 was paid to be applied on Holcomb's indebtedness, and the court was justified in directing a verdict for plaintiff in the sum of $2,000, and would have committed no error had he not submitted said special interrogatory to the jury. That the bank, under the circumstances, was liable does not seem to admit of any question. In *Crowder State Bank v. Ætna Powder Co. et al.*, 41 Okla. 394, 138 Pac. 392, the cashier of the bank had agreed to hold the amount of a certain bill out of the funds due the debtor when received by the bank, and in an action against the bank liability was denied on the ground that the acts of the cashier were *ultra vires*, and, in affirming the judgment for plaintiff, this court said:

"Where a cashier of a bank makes a contract which is beyond his power and authority, but the bank by reason thereof secures a benefit or a beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of *ultra vires*. *Shawnee National Bank v. Purcell Wholesale Gro. Co.*, 34 Okla. 34, 124 Pac. 603, 41 L. R. A. (N. S.) 494.

Conceding, for the purpose of this case, that the contract of guaranty was beyond the power of the bank to make, yet, when it induced plaintiff to part with her money on the faith of its promise to repay the same in the event of Holcomb's default, a sense of right and natural

justice requires that it be not permitted to receive and retain the fruits of its illegal agreement and at the same time escape liability for the amount received by it. If the contract be unlawful, it is not inherently immoral, and in such cases, while refusing to permit an action upon the unlawful contract, the law will, in consonance with sound legal principles, seek to do justice between the parties by permitting a recovery of that which has been obtained upon the faith of the unlawful contract. It would be a reproach upon the law and its administration if no relief could be had under such circumstances. In *Citizens' Cent. Nat. Bank v. Appleton, Receiver,* 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443, the Cooper Exchange National Bank had loaned to one Samuels, upon the written guaranty of the Central National Bank, $12,000. The Central National Bank had guaranteed the payment of said sum at maturity. Previous to the execution of the loan Samuels, being indebted to the Central National Bank, had agreed with them to procure this loan and pay $10,000 on his indebtedness. The question of the authority of the bank to execute the contract of guaranty was presented, but, waiving it aside, the court held the bank liable, and affirmed the judgment. The syllabus of this case is as follows:

"A national bank which, in pursuance of a previous agreement with its debtor that he will devote to the discharge of his indebtedness a part of the proceeds of a loan to be obtained by him from another bank, requests the making of such loan, and guarantees its payment at maturity, must account to the lending bank for the sum which it receives for its own use in the execution of the agreement, even though such guaranty is beyond its powers under the national banking statute."

The facts in that case were very similar to the facts in the case at bar; and, under the rule there stated, it is

clear that, when the bank, in pursuance of its agreement with Holcomb that he would devote the proceeds of the loan to the discharge of his indebtedness, agreed to guarantee the payment of said loan at maturity, it must respond to the plaintiff for the amount received by it in the execution of its agreement of guaranty, irrespective of the right to execute such agreement.

The judgment of the trial court is therefore affirmed.

All the Justices concur.