## In re NEW STATE LIFE INS. CO.

No. 23519.   Opinion Filed June 6, 1933.

Rehearing Denied July 5, 1933.

Owen F. Renegar, for plaintiff in error.

J. Berry King, Atty. Gen., and Randall S. Cobb, Asst. Atty. Gen., for defendant in error.

RILEY, C. J.   Substantially the only questions presented by this appeal are whether or not the plaintiff in error, a mutual life insurance company, was insolvent in that its matured liabilities exceeded its admitted assets independently of the contract hereinafter set out, and if not, then whether certain money advanced by a life insurance company chartered, but not yet licensed under the provisions of chapter 60, S. L. 1923, to a mutual life, health, and accident company or association authorized and licensed under the provisions of chapter 32, S. L. 1925, as amended by article 3, ch. 51, S. L. 1931, under the contract above mentioned, was a matured liability of the mutual company, within the meaning of subdivision C, sec. 5, ch. 32, S. L. 1925, which reads:

"Each such association or company shall be held to be legally solvent so long as its admitted assets are equal to or in excess of its matured liabilities."

The contract between the two companies reads:

"This contract made and entered into this 16th day of May, 1929, by and between the New State Life Insurance Company, an association, incorporated under the mutual benefit laws of the state of Oklahoma, hereafter referred to as the association, and the Western Life Insurance Company, a corporation of Shawnee, Oklahoma, and hereinafter referred to as the corporation. Witnesseth:

"The association agrees to reinsure or transfer its business with that of the corporation when the capital stock of the corporation as now authorized, or hereafter authorized, is fully paid for and its surplus and reserves as provided by the laws of the state of Oklahoma pertaining to the insurance business have been fully complied with. The consideration for this agreement is that the corporation will furnish the association money as needed in the development of the association's business, in such amounts as the corporation has available for loan purposes, to be used by said association in developing and furthering the business of said association and advertising the name 'New State Life Insurance Company,' and further, that the corporation will reinsure all the business of the association on a basis satisfactory to the members of the association and to the Department of Insurance of the state of Oklahoma and that the corporation will assume liability for all money advanced to the association by individuals or by its certificates of stock. And provided, further, that the management of said association shall, at all meetings of the corporation, be entitled to vote in an amount equal to the amount of money furnished and outstanding to the association by the corporation.

"It is further agreed that the corporation will not demand the return of said money so advanced until it has completed its qualifications to transact the business of insurance under the laws of this state and been licensed to do such business; and further, not until the association has refused to be reinsured or have its business transferred to the corporation. Upon such qualifications and such refusal, said corporation is authorized to demand the return of all funds outstanding, advanced under this contract and then not repaid, plus 6% interest from the date of all said advances, upon each item of advance, and thereupon the association shall make payment of all such funds upon just demand within 120 days from the date thereof."

The proceedings out of which this appeal arises were commenced originally by an appeal, or attempted appeal, by the mutual company to the district court from an order, ruling, or act of the State Insurance Commissioner. What particular order, ruling, or act of the Commissioner was sought to be appealed from does not clearly appear, nor is it material here. Upon the filing of the attempted appeal the Insurance Commissioner, by way of cross-petition, commenced a proceeding under the provisions of section 1, art. 3, ch. 51, S. L. 1931, for the dissolution of the mutual company and for the several orders therein provided for.

Four separate causes of action were set out in said cross-petition. Thereafter and before the hearing, by agreement with the parties, the so-called appeal was dismissed and the Commissioner dismissed his cross-petition as to causes of action 2 and 4 therein. Thereupon the cause went to trial before the court on causes 1 and 3 of the cross-petition, and the answer or reply filed thereto.

The first cause of action alleged, in substance, that the mutual company was then hopelessly insolvent, in that its matured liabilities far exceeded its admitted assets, in that its admitted assets were but $1,-621.26, and its matured liabilities were $24,-355.48.

The third cause alleged, in substance, that the mutual company had exceeded its powers in entering into the contract with the stock company and accepting advances thereunder aggregating the sum of approximately $14,-312; that the contract was entered into without authority of law and in contravention of the by-laws of the mutual company then in force; that the contract and transactions had thereunder were invalid for the reason that the contract had never been approved by the Insurance Commissioner.

Trial was had, resulting in findings that the Insurance Commissioner had sustained the allegation as to causes 1 and 3 of the cross-petition; that the mutual company was hopelessly insolvent because its matured liabilities far exceeded its assets; that the mutual company had exceeded its powers in entering into and attempting to carry out the contract with the stock company, and that the mutual company should be permanently restrained from transacting an insurance business in this state, and that the receiver should be appointed and the affairs of the company wound up as provided by article 3, ch. 51, S. L. 1931. Judgment was entered accordingly, and the mutual company appeals.

It is clear that if the sum of money aggregating some $14,556.82, advanced by the stock company to the mutual company under the contract, is, and was at the time of the hearing, a matured liability of the mutual company under the law, the mutual company was and is hopelessly insolvent, and the judgment must be affirmed.

Aside from that question, an examination of the record will disclose the insolvency of the mutual company at the time of the trial. An examination of the affairs of that company was made by the Insurance Commissioner in July, 1931. At that time total admitted assets of the company amounted to $1,621.26, consisting of three items: Cash in the bank, $43.51; government bonds $1,500; Oklahoma Travelers' Association, $77.75.

Among the liabilities shown by the ledger of the company was indebtedness to E. E. Brown, president of the company, $5,346.77, and to H. O. Brown, $1,545.55.

Sometime prior to the hearing it appears that E. E. Brown retired from the company and one E. H. Houston became president. Houston testified that at the time of the trial the item of cash in the bank had increased to a little over $300; that the claims of E. E. Brown and H. O. Brown had been released. The terms of the release were not shown, but it was admitted that Brown had had the $1,500 in government bonds pledged to him as security for his claim; that the bonds had never been returned to the company, and that they were not then a part of the admitted assets of the company. The admitted assets then were a

little over $377.75. There were unpaid claim of policyholders aggregating $1,453.-75, and liabilities listed as reserve fund, $401.15, and advance assessments of $782.05. There were other items listed as liabilities aside from the $14,556.82, advanced by the stock company. The admitted assets were but a little over $377.75, and the admitted liabilities, aside from the money advanced by the stock company, aggregate the sum of $2,618. The $1,500 government bonds have disappeared from the assets of the company. Therefore the matured liabilities of the company exceeded the admitted assets.

Furthermore, we are of the opinion that the money advanced by the stock company is and was a matured liability of the mutual company. The record discloses that the stock company procured its charter under chapter 60, S. L. 1923. It was capitalized at $50,000. Some $20,000 of its capital stock had been paid in. It does appear that the stock company had never complied with section 3 of the act under which it procured its charter, and deposited with the State Treasurer securities approved by the State Insurance Commissioner as required by the act. Without so doing it had no power whatever to commence the business of insurance in this state. It never procured a license or permit to do business from the State Insurance Commissioner. Thus, without authority to transact an insurance business in this state, the stock company advanced the mutual company approximately $14,556.82 of the money belonging to its stockholders, under the contract above set out. Whether the contract be one of re-insurance or contract of merger with the mutual company, it was ultra vires and invalid. Plaintiff in error in its brief, states:

"All parties to this controversy agree that in so far as the Western Life Insurance Company, * * * a stock company, is concerned, that said company entered into said contract before it was licensed to do business and that whatever it did was illegal as well as ultra vires."

It is then contended that, the contract being ultra vires, the stock company would not be able to maintain an action thereon, and that it would not be in a position to elect to disaffirm the contract and bring an action "quasi ex contractu."

If it be true that the contract is ultra vires as to the stock company, as being illegal and beyond the power of the company,

clearly it could not maintain an action on the contract. It is not such a contract as may be termed ultra vires only because made or entered into by some agent of the company acting beyond the scope of his authority, but within the power of the corporation itself to make, and, therefore, subject to confirmation by the corporation, but it is such a contract that the company could not itself make or authorize its agent to make.

The general rule seems to be that a contract which is ultra vires in its true sense, as beyond the power of the corporation, is void and no action can be maintained upon the contract itself, and the contract cannot be ratified by either party, because it could not have been authorized in the first instance by either party. 14A C. J. 580-81.

But where money has been advanced under an ultra vires contract which has not been entirely executed, a contract on the part of the party receiving same to return the money is implied by law. The rule is clearly stated in Central Transportation Company v. Pullman · Palace Car Co., 139 U. S. 24, 35 L. Ed. 55, wherein it is said:

"In such case, however, the action is not maintained upon the unlawful contract nor according to its terms, but upon an implied contract of the defendant to return."

See, also, Crowder St. Bk. v. Aetna Powder Co. et al., 41 Okla. 394, 138 P. 392; Roxana Pet. Co. v. Covington St. Bk., 132 Okla. 221, 269 P. 1100.

Therefore, when the money belonging to the stockholders of the stock company was advanced to the sales company under the admittedly ultra vires contract, the mutual company was obligated at once to return the same. Not under the terms of the contract itself, but under the contract which the law implied, the liability therefore became a present matured liability. The stock company had a right at once, as soon as the money was advanced, to have the same returned. It might have commenced an action at once for the recovery of the money. The cause of action having accrued when the money was advanced, the liability was then, and at all times since has been, a matured liability.

The judgment is affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, BAYLESS, OSBORN, BUSBY, and WELCH, JJ., concur.