EQUITABLE ROYALTY CORP. et al. v. HULLET et al.

No. 34784.    April 1, 1952.

Rehearing Denied May 6, 1952.

*243 P. 2d 986.*

Houts & Houts, Alva, for plaintiffs in error.

Mauntel, Spellman & Doolin, Alva, for defendants in error.

HALLEY, V.C.J. Equitable Royalty Corporation and other claiming to own an undivided one-half interest in the minerals in a tract of land in Woods county, Oklahoma, filed this action to quiet title to their mineral interests against Pauline M. Hullet, the Federal Land Bank of Wichita, Kansas, and Stephens Petroleum Company, a corporation. Stephens Petroleum Company has filed in this court an application to dismiss as to it, on the ground that the only interest claimed by it was an oil and gas lease, which has expired. A stipulation of the parties shows that this concern has no further interest in this litigation and is not obligated in any manner to the other parties, and this appeal is hereby dismissed as to Stephens Petroleum Company.

The facts out of which this controversy arose are covered by stipulation, the pertinent portions of which are as follows:

On September 1, 1925, Leo C. Hullet and Cleo E. Hullet owned the land involved, and on that date were joined by their wives in the execution of two mortgages to Monarch Loan Company: one a first mortgage for $7,000, and the other a second mortgage for $700.

On June 29, 1927, the above-named Hullets and their wives conveyed by mineral deed containing unconditional covenants of warranty an undivided one-half of the minerals in the land in question to B. H. Rowlett and L. E. Regan, and by mesne conveyances the present plaintiffs acquired that mineral interest. Pauline Hullet, who joined in the execution of the mineral deed as the wife of Cleo E. Hullet, is one and the same person as Pauline M. Hullet, a defendant in this action.

On November 19, 1927, Leo C. Hullet and wife conveyed all of their interest in the land to Cleo E. Hullet, subject only to the two mortgages above mentioned.

On September 10, 1932, the Monarch Loan Company brought an action to foreclose its second mortgage. Judgment foreclosing that mortgage was rendered subject to the first mortgage. All of the plaintiffs, then owners of the one-half mineral interest, were made parties to the foreclosure action. They appeared and prayed for a marshaling of assets, and the land was offered first subject to their mineral interest, but no bids were received, and upon being offered free from such mineral interest it was bid in by Monarch Loan Company. Sheriff's deed was issued August 14, 1933, conveying the entire interest in the land, subject only to the first mortgage and an agricultural lease in favor of Cleo E. Hullet, the husband, and Pauline M. Hullet, and it was agreed that they had been in actual possession of the land since November 19, 1927. Cleo E. Hullet died September 2, 1939. It was agreed that the above foreclosure proceedings were regular and not subject to collateral attack.

On August 28, 1933, Monarch Loan Company conveyed the land by warranty deed to Connecticut General Life Insurance Company, the holder of the first mortgage, and on November 8, 1933, that mortgage was released.

On July 9, 1941, the Connecticut General Life Insurance Company, for valuable consideration, conveyed the land to the defendant Pauline M. Hullet, reserving an undivided one-fourth interest in the minerals. Plaintiffs had no actual knowledge of said deed or negotiations leading to the acquisition of said land by Pauline M. Hullet prior to August 1, 1949.

On February 9, 1949, Pauline M. Hullet mortgaged the land to the Federal Land Bank of Wichita, Kansas, to secure a loan of $5,400, which constitutes a valid first lien upon her interest in the land.

The mineral deed from Leo C. Hullet and Cleo E. Hullet and their wives, conveying a one-half interest in the minerals, contained the following clause:

"To Have and To Hold the above described property, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Grantees herein, their heirs and assigns forever; and we do hereby bind ourselves and our heirs, executors, and administrators to warrant and forever defend all and singular the said property unto the said Grantees herein, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

It was agreed that all conveyances above mentioned were for a good and valuable consideration, regular in form, and free from fraud. The case was tried to the court, who rendered judgment for defendants, and plaintiffs have appealed. The parties will be referred to as they appeared in the trial court.

Plaintiffs first contend:

"That owner of land subject to mortgage lien who issues mineral deed containing unconditional covenants of warranty may not permit lien to be foreclosed, and subsequently acquire title and claim adversely to the grantees in his mineral deed."

Plaintiffs claim that when Pauline M. Hullet received the deed from Connecticut General Life Insurance Company on July 9, 1941, their interest in the land immediately reattached under the common-law doctrine of estoppel by deed, defined in sec. 16, 19 Am. Jur., Estoppel, p. 603, as follows:

"Estoppel by deed is a bar which precludes one party to a deed and his privies from asserting as against the other party and his privies any right or title in derogation of the deed or from denying the truth of any material facts asserted in it. Estoppel by deed is technical in nature, and such an estoppel may conclude a party without any reference to the moral qualities of his conduct. . . .

"To constitute an estoppel by deed, a distinct and precise assertion or admission of a fact is necessary. Hence, an estoppel by deed or similar instrument can arise only where a party has conveyed a precise or definite legal estate or right by a solemn assurance which he will not be permitted to vary or deny. Such estoppel should be certain to every intent."

This doctrine has been adopted into our statutes as Sec. 17, 16 O. S. 1951, as follows:

"All rights of a mortgagor or grantor in and to the premises described in the instrument and existing at the time or subsequently accruing, shall accrue to the benefit of the mortgagee or grantee, and be covered by his mortgage or conveyed by his deed, as the case may be."

Our attention is called to the case of U. S. National Bank v. Miller, 122 Ore. 285, 258 P. 205, 58 A. L. R. 339, wherein extensive annotations show that the doctrine of estoppel by deed is recognized by the courts of the vast majority of states. At page 350 of the annotations, subd. (b), it is said:

"It is a general rule, supported by many authorities, that a deed purporting to convey a fee simple, or a lesser definite estate in land, and containing covenants of general warranty of title or of ownership, will operate to estop the grantor from asserting an after-acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him. One of the more frequent ways of expressing the rule is that the subsequently acquired title inures to the benefit of the grantee, this form of expression usually meaning apparently that the title passes by way of estoppel, or at least that, whether the title has actually passed or not, the grantor or mortgagor is estopped from asserting the after-acquired title or interest."

In the early Michigan case of Smith v. Williams, 44 Mich. 240, 6 N. W. 662, it was said:

"Where one assumes by his deed to convey a title and by any form of assurance obliges himself to protect the grantee in the enjoyment of that which the deed purports to give him, he will not be suffered afterwards to acquire or assert a title and turn his grantee over to a suit upon his covenants for redress. The short and effectual method of redress is to deny him the liberty of setting up his after-acquired title as against his previous conveyance. This is merely refusing him the countenance and assistance of the courts in breaking the assurance which his covenants have given."

We are not cited to any Oklahoma case where the facts are identical with those before us, but in Scott v. Cohen, 115 F. 2d 704, in the C. C. A. of the Fifth Circuit, the facts were the same as in the case before us, and that court said:

"When Cohen took his mineral deed, he took it subject to the outstanding deed of trust from Jones to Howell. When the deed of trust was forelosed and the property sold and then reacquired by Jones, the original owner, the after-acquired title to one-half the minerals vested in Cohen. . . . The mineral deed to Cohen was duly recorded and Scott, the subsequent purchaser of the land, had constructive notice of it. Scott took his title subject to Cohen's prior deed. The court properly held that title to one-half of the oil, gas and other minerals was in Aaron Cohen."

In Burnett v. Cole, 193 Okla. 25, 140 P. 2d 1012, Burnett owned the surface rights and Cole and Crowe the mineral rights. Burnett permitted the taxes to become delinquent, and the land was sold to the county at resale. The county conveyed to one Lucas, who undertook to convey the entire fee-simple title back to Burnett, the original owner of the surface, who claimed he had repurchased from a third party and was not subject to estoppel. In denying this contention, the court said:

". . . the person upon whom the original duty to pay the taxes rested may not profit by his own neglect even by purchasing from a stranger who has purchased at the tax sale. In such cases the equities existing against the original obligor may be cut off while the land is owned by such stranger or other third parties, but when the land is conveyed to the original obligor, the former status is at once restored, or at least the original obligor is estopped to deny it."

It is claimed by the defendants that Pauline M. Hullet is not bound by the covenants of warranty in the mineral deed, because she signed only as the wife of her husband. There appears to be a conflict of authorities upon this question. However, Pomeroy, in his Equity Jurisprudence, sec. 814, says:

"The tendency of modern authority, however, is strongly towards the endorsement of the estoppel against married women as against persons sui juris, with little or no limitation on account of their disability. This is plainly so in states where the legislation has freed their property from all interest or control of their husbands, and has clothed them with partial or complete capacity to deal with it as though they were single. Even independently of this legislation there is a decided preponderance of authority sustaining the estoppel against her, either when she is attempting to enforce an alleged right, or to maintain a defense."

Thompson on Real Property, sec. 3842, says in part:

"The joint makers of a deed are severally liable on the covenants thereof, at least where such covenants contain no words of severalty."

This court said in Brusha v. Board of Education, 41 Okla. 595, 139 P. 298, that:

"Sec. 5561, C. L. 1909, provides that a married woman may sue and be sued in the same manner as if she were not married. Throughout the statute is manifested the intention to give the wife the same rights and standing in the community and in the courts with reference to her property as a man. If

she has the same right, she is charged with the same duties."

The question of whether plaintiffs were barred by limitations upon the theory that the covenants of warranty in the mineral deed to them were breached when the land was sold at foreclosure in 1933, and no action was instituted within five years thereafter, was not pleaded. Limitation is a defense that must be pleaded and may be waived. It is considered waived unless pleaded, and we find no reason for further discussion of this matter.

The defendants assert that sec. 17, Title 16, O. S. 1951, quoted above, was not intended to apply to the facts before us, but is merely the pronouncement of an equitable principle. We cannot agree with this contention. This is not a case where "equitable estoppel" or "estoppel in pais" is applicable. Here, estoppel by deed alone is applicable and controlling.

In Rosser v. Texas Co., 123 Okla. 309, 48 P. 2d 327, cited by defendants, it is stated that there are five essential elements necessary to create an estoppel. The first essential is that there must be a false representation or concealment of material facts. We shall not repeat here the remaining four essential elements.

The above illustrates very clearly that the court was speaking of equitable estoppel, or estoppel in pais, and not of estoppel by deed. There is a clear distinction between the two. 31 C. J. S., Estoppel, sec. 10, defines estoppel by deed in this language:

"Estoppel by deed is a bar which precludes a party to a deed and his privies from asserting as against the other and his privies any right or title in derogation of the deed or from denying the truth of any material fact asserted in it. In order that a deed may give rise to an estoppel, it must contain representations or covenants; and an estoppel by deed may be invoked only in a suit on the deed or concerning a right arising out of the deed."

It is also said, in the same section:

"Estoppel by deed is distinguishable from estoppel in pais, in that it appears from the face of the deed, and it does not require all of the elements of an estoppel in pais.

"Unlike estoppels in pais, a technical estoppel by deed may conclude a party without reference to the moral qualities of his conduct."

In 31 C. J. S., Estoppel, sec. 13, as to estoppel by deed as against the grantor, it is said:

"A person who assumes to convey an estate by deed, or his successor, is estopped, as against the grantee, or those in privity with him, to assert anything in derogation of the deed; he will not be heard, for the purpose of defeating the title of the grantee, to say that at the time of the conveyance he had no title, or that none passed by the deed, nor can he deny to the deed its full operation and effect as a conveyance."

Other authorities cited by defendants deal with equitable estoppel or estoppel in pais, and have no application to estoppel by deed.

The present title of Pauline M. Hullet clearly stems from the mortgages she executed with her husband and others, and under which she became obligated. She and the other mortgagors permitted those obligations to lapse, resulting in the foreclosure of the second mortgage and vesting of title in the Monarch Loan Company by sheriff's deed, subject to the lien of the first mortgage, under which she was also obligated. Plaintiffs had no duty to pay either of these mortgage debts. The mineral deed under which plaintiffs claim title was executed by Pauline M. Hullet with full covenants of warranty, while the mortgage liens were in existence. She afterward acquired the title growing out of the mortgage foreclosure. She had never been out of actual possession of the land.

We conclude that when she reacquired title, which she had lost by the foreclosure proceedings, she came clearly within the doctrine of estoppel

by deed, and could not escape her solemn promise to warrant and forever defend the title she had conveyed to plaintiffs.

The judgment of the trial court is reversed, with directions to enter judgment for the plaintiffs.

GIBSON, DAVISON, JOHNSON, and BINGAMAN, JJ., concur. WELCH, CORN, and O'NEAL, JJ., dissent.