**LABOR INVESTMENT CORPORATION, a corporation, Plaintiff in Error,**

v.

**Ralph W. RUSSELL, Defendant in Error.**

**No. 40631.**

Supreme Court of Oklahoma.

March 9, 1965.

Rehearing Denied Sept. 21, 1965.

George F. Short, Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, for plaintiff in error.

Charles Nesbitt and Morton Y. Loar, Oklahoma City, for defendant in error.

HALLEY, Chief Justice.

Defendant in error (plaintiff below) commenced this action on February 15, 1960, in the District Court of Oklahoma County, Oklahoma, against plaintiff in error (defendant below) for breach of a stock option contract. The parties will be referred to as they appeared in the trial court.

The facts are not in dispute. Defendant was organized on March 26, 1956, for the purpose of raising capital for the formation of a life insurance company as a wholly-owned subsidiary. Plaintiff, one of seven organizers, subscribed for 5,000 shares of defendant's stock from the 28,000 shares originally subscribed, prior to the organizational and first meeting of the stockholders. At this first meeting of the shareholders on March 26, 1956, the defendant corporation was authorized to enter into the stock option contract with plaintiff, which is the subject of this action.

The stock option contract, dated March 28, 1956, provided that in consideration of services already rendered by plaintiff in the organization and formation of defendant, and services to be rendered by plaintiff in the public sale of defendant's stock (pursuant to a Securities Sales Agreement of even date between the parties), plaintiff was granted an option to purchase 50,000 shares of Class B voting capital stock of defendant at $2.00 per share for and during the period of four years from the date thereof. The parties executed a written amendment to the Stock Option Agreement on April 13, 1956, providing that instead of the option to purchase all Class B voting shares, the option should be in the ratio of purchasing five Class A non-voting shares to one Class B voting share.

Plaintiff prepared all legal instruments for defendant's incorporation and organization, including its articles of incorporation, by-laws, minutes, stock and necessary contracts. He filed application of registration for public sale of 250,000 shares of defendant's stock with the Oklahoma Securities Commission; appeared before that commission on several occasions; and secured its approval to sell defendant's stock to the public and the use by defendant therein of a sales and advertising prospectus prepared by plaintiff.

Plaintiff served the defendant corporation as Executive Vice President, Secretary and Treasurer, and General Counsel, devoting his full time to the management of defendant's business affairs for a period of approximately five months. During this time, plaintiff handled all applications for purchase of the corporation's stock; collected any periodical installments due defendant from the sale of its stock; attended meetings to promote stock sales; made the corporation's bank deposits, handled all its day-to-day legal problems; and attended to the accounting and investment of money received. Plaintiff further furnished a corporate and sales office for the defendant

corporation at his own expense, and paid all defendant's telephone, office and secretarial expenses. He received no salary, compensation, nor reimbursement for his services or expenditures.

Disharmony among the corporation's directors brought about plaintiff's resignation as an officer and sales agent for the defendant corporation; plaintiff's assignment, on August 10, 1956, to defendant of his interest in the Securities Sales Agreement; and defendant's repudiation, on March 11, 1957, of the Stock Option Agreement and the present lawsuit.

Plaintiff's petition set out his option contract with the defendant corporation to purchase its stock and alleged that the defendant had breached the contract on March 11, 1957. Plaintiff alleged that the fair market value of defendant's stock at the time of the breach was $5.00 per share, and further that he had been damaged in the sum of $149,964 by reason thereof and prayed for judgment in that amount.

Defendant, by answer, asserted that the agreement in its inception was ultra vires, because in violation of 18 O.S.1951 § 1.46, and further alleged both failure of consideration and accord and satisfaction. By way of reply, plaintiff alleged defendant was estopped to claim that the stock option contract was ultra vires for reason that plaintiff performed valuable legal services in the value of $25,000, without compensation, in reliance upon the contract, and that defendant corporation received exclusive benefit of the services rendered.

The matter was tried to the court without a jury. The trial court found that the stock option contract was ultra vires, but that the plaintiff was entitled in equity to recover on a quantum meruit basis for the reasonable value of the services rendered defendant, and entered judgment for the plaintiff against the defendant in the sum of $17,500. Defendant perfected this appeal, which is presented under three general propositions. However, plaintiff filed a cross-appeal based upon the trial court's failure to render judgment in his favor for damages for breach of the option contract in the sum of $149,964, which is presented under five general propositions. We shall consider plaintiff's and defendant's propositions together when applicable.

Plaintiff's first proposition on his cross-appeal is that the stock option contract sued upon does not violate 18 O.S.1951 § 1.46, and that consequently, plaintiff is entitled to judgment for damages for breach of the stock option contract. We cannot agree.

At the time this cause of action arose, the power of a domestic corporation to grant options to purchase capital stock was set out in 18 O.S.1951 § 1.46, which provided in part:

"a. Subject to any further limitations or restrictions contained in the articles of incorporation, every domestic corporation may grant, *but only in connection with the allotment of shares* * * * and only to the persons to whom such allotments * * * is made * * * options to purchase or subscribe for shares * * *." (Emphasis added.)

Allotment is defined by 18 O.S.1961 § 1.2 (12) as "the apportioning of shares to a subscriber in response to his subscription, * * *."

Plaintiff's stock, as an organizer of the defendant corporation, was subscribed for prior to the date of the stock option contract, of March 28, 1956. The option contract was to compensate plaintiff, as an officer and incorporator of defendant, for past and future services. The above cited statutes were an obvious attempt to prevent abuses of the option device by the officers and incorporators of a domestic corporation, and their plain wording compels us to the conclusion that options to purchase shares of stock could only have been granted by a domestic corporation, under those statutes, in response to and fulfillment of a stock purchase subscription. It is unmistakenly clear that the stock option contract under consideration was not granted to plaintiff in response to and fulfillment of his stock purchase subscription.

The case of Emerson v. Labor Investment Corp., 10 Cir., 284 F.2d 946, involved an identical stock option contract held by another of the organizers of the defendant corporation, and was decided upon the precise question involved herein. In the body of that opinion, page 949, the Court of Appeals said:

" * * * But the plain wording of the statute compels the conclusion that options to purchase shares of stock can only be granted by the corporation in response to and fulfillment of a stock purchase subscription or pursuant to the declaration of a stock dividend, 18 O.S.A. § 1.2(12). In other words, the definition of 'allotment' contained in 18 O.S.A. § 1.2(12) and the use of the phrase 'only in connection with the allotment of shares or the issuance of bonds or other securities' in 18 O.S.A. § 1.46 prevent the corporation from entering an agreement such as this to compensate its officers or incorporators for past or future services, absent other considerations creating a situation within the definition of allotment."

■ Plaintiff's argument and cited authorities upon this point are not helpful here. It is unnecessary for the Court to resort to extrinsic aids in arriving at the legislative intent since it is clearly expressed in the statutory language itself.

■ However, plaintiff further argues that his option contract with the defendant corporation was specifically validated by subsequent action of the Legislature in enacting 18 O.S.1961 § 671. Unquestionably, this type of curative statute is valid, as contended by plaintiff, unless there be some constitutional inhibition. Art. 5, § 52, of the Oklahoma Constitution, provides in part:

" * * * After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit."

This curative Act possibly would have validated plaintiff's option contract for purchase of shares in defendant's corporation if plaintiff's cause of action had not been commenced before the Act became effective on June 28, 1961. Lusk et al. v. Starkey, 53 Okl. 794, 158 P. 918; Atchison, T. & S. F. Ry. Co. v. Eldredge, 67 Okl. 110, 169 P. 1071; Harris v. Boggess, 113 Okl. 60, 238 P. 477; Fidelity & Deposit Co. of Maryland v. State ex rel. Horton, 185 Okl. 324, 93 P.2d 758; and Maynard v. Central Nat. Bank of Okmulgee et al., 185 Okl. 272, 91 P.2d 653. Plaintiff's citations are not helpful under this argument. The judgment of the trial court on this point must be upheld.

■ Plaintiff's second proposition is that in the alternative, if the option contract was ultra vires, plaintiff was entitled to judgment in equity compensating him for the value of his performance under the contract; and in opposition thereto, defendant's third proposition is that no recovery can be granted plaintiff on quantum meruit for services rendered under an unlawful contract. We agree with plaintiff's contention.

■ There was nothing in this option contract that involved moral turpitude, or that provided for doing anything immoral or illegal, or that in any way contravened public policy. It was a proper and legitimate subject of contract between plaintiff and defendant. The option contract was defective because of the corporation's failure to grant plaintiff's option in response to his purchase subscription. In such situations, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting that parted with on faith of the unlawful contract to be recovered back or compensation to be made for it.

■ In Shawnee Nat. Bank v. Purcell Wholesale Grocery Co., 34 Okl. 34, 44, 124 P. 603, 608, 41 L.R.A.,N.S., 494; and in

Crowder State Bank v. Aetna Powder Co. et al., 41 Okl. 394, 402, 138 P. 392, 395, L.R.A.1917A, 1021, we quoted with approval from a decision of the Supreme Court of the United States in Central Transp. Co. v. Pullman's Palace Car Co., 139 U.S. 24, 11 S.Ct. 478, 35 L.Ed. 55, as follows:

" 'A contract ultra vires being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between parties, so far as could be done consistently with adherence to law, by permitting the property or money parted with on faith of the unlawful contract to be recovered back or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm but to disaffirm the unlawful contract.' "

We think Oklahoma City Nat. Bank et al. v. Ezzard, 58 Okl. 251, 159 P. 267, L.R.A. 1918A, 411, is also helpful here. Plaintiff sued the bank upon a written guaranty contract, and the bank defended upon the theory that the contract was beyond the power of the bank to make under the National Banking Act and was therefore ultra vires. At page 257 of that opinion, 159 P. page 269, we said:

" * * * If the contract be unlawful, it is not inherently immoral, and in such cases, while refusing to permit an action upon the unlawful contract, the law will, in consonance with sound legal principles, seek to do justice between the parties by permitting a recovery of that which has been obtained upon the faith of the unlawful contract.

It would be a reproach upon the law and its administration if no relief could be had under such circumstances. * * * "

Also in this connection, see Western & Southern Fire Ins. Co. v. Murphey, 56 Okl. 702, 156 P. 885; Rainbow Oil & Gas Co. v. Barton, 70 Okl. 271, 173 P. 1135; Roxana Petroleum Co. of Oklahoma v. Covington State Bank, 98 Okl. 266, 225 P. 375, 35 A. L.R. 774; Roxana Petroleum Co. v. Covington State Bank, 132 Okl. 221, 269 P. 1100; In re New State Life Ins. Co., 164 Okl. 208, 23 P.2d 376.

The cases cited by defendant from this jurisdiction under its third proposition all involve contracts which were either immoral or against public policy, and therefore are not in point.

Defendant's first proposition is that no recovery could be granted plaintiff on quantum meruit because recovery on such a cause of action was not sought in the petition, but was asserted for the first time in plaintiff's reply; and the trial court erred in refusal to strike such allegations from the reply. However, the record is such that we are not permitted to consider the above proposition. Defendant raised the issue of departure by motion to strike a portion of plaintiff's reply, but we do not observe anywhere in the record that the trial court was ever asked to pass upon this issue or that the trial court did pass upon it, and, as a consequence, there is no error of the character urged by defendant's first proposition for us to consider. United Transports, Inc. et al. v. Jett, 193 Okl. 399, 144 P.2d 110; Young v. Mayfield, Okl., 316 P.2d 162; and Edwards v. Pierce, Okl., 376 P. 2d 269. Our ruling on this proposition disposes of plaintiff's third and fourth propositions.

Defendant's third proposition is that no recovery could be granted plaintiff on quantum meruit or implied contract because such recovery is barred by the three-year statute of limitations; and plaintiff's fifth proposition is in opposition thereto. Defendant attempted to assert the bar of limitations by

# 1014

motion to strike a portion of plaintiff's reply. The statute of limitations was not otherwise pleaded, and as we have previously indicated, so far as the record discloses, the motion and the question of limitations was not presented to the trial court.

However, it has been repeatedly held by this Court that the statute of limitations is an affirmative defense which must be pleaded by the party asserting it or claiming it, and when it is not pleaded, it is waived. Equitable Royalty Corp. et al. v. Hullet et al., 206 Okl. 233, 243 P.2d 986; Straub et al. v. Swaim, Okl., 296 P.2d 147.

A motion to strike is not a proper pleading by which to raise the statute of limitations. McGrath et al. v. Eichoff, 187 Okl. 64, 100 P.2d 880, is in point here. There the bar of limitations was sought to be raised for the first time by a motion to strike a portion of plaintiff's reply. At page 67, in that opinion, 100 P.2d page 883, we said:

> "* * * For this reason and the further reason that a motion to strike is not the proper pleading by which to assert the bar of limitations, the trial court committed no error in overruling the defendants' motion to strike the reply. See Berry v. Geiser Mfg. Co. 15 Okl. 364, 85 P. 699; Crumpt [Crump] v. Lanham, 67 Okl. 33, 168 P. 43; and Bronson v. Reed, 167 Okl. 447, 30 P.2d 459."

Defendant's citations under this proposition are not in point, and we find no reason for further discussion of this matter.

We are convinced that recovery on quantum meruit was proper.

Judgment of the trial court is affirmed.

DAVISON, JOHNSON, WILLIAMS, BLACKBIRD and BERRY, JJ., concur.

IRWIN, J., concurs in result.

JACKSON, V. C. J., concurs in part and dissents in part.