Dear President Taylor,
¶ 0 This office has received your request for an Attorney General Opinion addressing the following question:
Under the Education Flexible Benefits Allowance Act, 70 O.S.26-101-70 O.S. 26-107 (1998), is a nonclassified educationemployee who routinely works at least six hours per day eligibleto receive a flexible benefit allowance although his or her jobdescription establishes a five-hour workday, in light of SenateConcurrent Resolution No. 3, 1998 Okla. Sess. Laws 2568, whichpurports to limit such an allowance for nonclassified educationemployees to personnel who work six or more hours per day?
¶ 1 The Education Flexible Benefits Allowance Act ("Benefits Act") attempts to provide local school district employees with a choice of employment benefits so these employees may "select and tailor the benefits they receive in a manner calculated to best meet the particular needs of themselves and their families." 70O.S. 26-102(1) (1998). The Benefits Act provides every local common school district and vocational-technical school district employee a monetary allowance to buy the benefits he or she chooses. See 70 O.S. 26-104(1998).
¶ 2 In providing this allowance, the Benefits Act makes a distinction between classified personnel and other personnel.Classified personnel are teachers, principals, supervisors, administrators, counselors, librarians, and certified or registered nurses. See 70 O.S. 26-103(8) (1998). Otherpersonnel are "employees of a school district that are not defined as classified personnel and shall include cooks, janitors, maintenance personnel, bus drivers, noncertified or nonregistered nurses, noncertified librarians, and clerical employees." 70 O.S. 26-103(4) (1998).
¶ 3 The Legislature intended the benefit allowance for classified personnel to equal half the cost of "major medical insurance health care coverage," and it intended the allowance for other personnel to equal the full cost of such coverage.See 70 O.S. 26-106 (1998). For State Fiscal Year 1999, the flexible benefit allowance for other personnel is eighty-five dollars apiece. See 70 O.S. 26-105(B) (1998).
¶ 4 As determined from the Secretary of State's files, the Benefits Act was passed near the end of the Second Session of the Forty-sixth Legislature as part of Senate Bill No. 902 and was signed by the Governor on June 9, 1998, after the sine die
adjournment of the session on the last Friday in May 1998.[1] Because Senate Bill No. 902 contained an emergency clause and an immediate effective date, the Benefits Act became effective on June 9, 1998.
¶ 5 On June 18, 1998, the Senate, acting during a special session, adopted Senate Concurrent Resolution No. 3, and the House of Representatives adopted the same resolution on June 19, 1998. The resolution was filed with the Secretary of State that same day, without being presented to the Governor for approval or disapproval, according to the Secretary of State's records. In the resolution, legislators recognized that the Benefits Act "defined other personnel to include nonclassified or support personnel, but the language did not specify full-time status." S. Con. Res. 3, 1998 Okla. Sess. Laws 2568. The House and Senate resolved:
 That the Legislature hereby expresses its intent that the flexible benefit allowance amount of Eighty-five ($85.00) Dollars per month for other personnel as established in [the Benefits Act] shall be credited only to other personnel, as defined in the act, who work six (6) or more hours per day for a school district and that the amount appropriated . . . shall be used only to pay the flexible benefit allowance of other personnel who work six (6) or more hours per day for a school district.
S. Con. Res. 3, 1998 Okla. Sess. Laws 2569.
¶ 6 The resolution also states:
 [I]t is clear based on the calculation of the amount appropriated in Enrolled Senate Bills No. 901 and 903 for the support personnel flexible benefit allowance that the Legislature intended the flexible benefit allowance be made available only to such full-time support personnel.
S. Con. Res. 3, 1998 Okla. Sess. Laws 2568.
¶ 7 First, it must be determined whether Senate Concurrent Resolution No. 3 modifies the Benefits Act or properly states legislative intent in such a way that the six-hour requirement will be read into the statute. To become law in Oklahoma, legislation must pass the State Senate and House of Representatives by a majority vote. See Okla. Const. Article V, Section 34 and Article V, Section 35. After passage, the legislation must be signed by the Governor. Okla. Const. ArticleVI, Section 11. This process may utilize either a bill or a resolution so long as all constitutional requirements for enacting law are met. See Ward v. State, 56 P.2d 136, 137
(Okla. 1936).
¶ 8 As stated earlier, Senate Concurrent Resolution No. 3 was never submitted to the Governor for approval or veto. In Oklahoma, the constitutionally created legislative process includes both houses of the Legislature and the Governor. Without approval by the Governor, Senate Concurrent Resolution No. 3 could not become law. McAllester v. Oklahoma TaxCommission, 50 P.2d 647, 651 (Okla. 1935). When all the requirements for passage of law are not fulfilled, a resolution is "the mere expression of an opinion." Hawks v. Bland,9 P.2d 720 (Okla. 1932). Without the status of law, Senate Concurrent Resolution No. 3 cannot amend the Benefits Act.
¶ 9 Although the resolution is not law, may it be used to interpret the Benefits Act as an indication of legislative intent since the primary goal in statutory construction is to give effect to legislative intent? See First American Bank v.Oklahoma Industrial Finance Auth., 951 P.2d 625, 631 (Okla. 1997). Any interpretation, however, cannot change the plain meaning of the earlier statute. See United States v. Gillis,95 U.S. 407, 415 (1877). When the meaning of the statute is plain on its face, it is inappropriate to resort to extrinsic means for interpreting the language. See Labor Investment Corp. v.Russell, 405 P.2d 1008, 1012 (Okla. 1965).
¶ 10 The statutory language is clear and unambiguous. School employees are covered under the Benefits Act regardless of their full-time or part-time status, according to the terms of Senate Bill 902. A review of the relevant language demonstrates the clarity. In stating its purpose, the Legislature makes no distinction between full-time and part-time employees:
 It is hereby declared that the purpose of the Education Flexible Benefits Allowance Act is:
 1. To recognize that the employee benefit needs of individual school district employees differ, depending on the age, salary and family status of the employee, and that it is needful to permit such employees to select and tailor the benefits they receive in a manner calculated to best meet the particular needs of themselves and their families; and
 2. To furnish school district employees with choices among various employee benefits or cash compensation.
70 O.S. 26-102 (1998).
¶ 11 The definitions created especially for the Benefits Act also are clear and indicate no intention to treat part-time education employees differently from full-time school district personnel. The opposite intention, namely to treat each employee alike, is evident:
 The following words and phrases as used in this act, unless a different meaning is clearly required by the context, shall have the following meanings:
. . . .
 3. "Flexible benefit allowance" means amounts credited by the school district for each school district employee for the purchase of benefits under the cafeteria plan;
 4. "Other personnel" means employees of a school district that are not defined as classified personnel and shall include cooks, janitors, maintenance personnel, bus drivers, noncertified or nonregistered nurses, noncertified librarians, and clerical employees of a school district;
. . . .
 7. "School district employee" means classified or other personnel as defined in this at; and
 8. "Classified personnel" means a teacher, principal, supervisor, administrator, counselor, librarian, or certified or registered nurse.
70 O.S. 26-103 (1998) (emphasis added).
¶ 12 The Legislature also demonstrated its willingness to identify certain types of employees and to exclude them from the flexible benefits program:
 On or before July 1, 1998, the state Legislature shall appropriate adequate funding to the State Board of Education and the State Board of Vocational and Technical Education for the purpose of providing a flexible benefit allowance to school district employees, excluding school superintendents, pursuant to this act.
70 O.S. 26-104(A) (1998) (emphasis added)
¶ 13 And:
 Each school district employee, other than superintendents, shall be credited annually with a specified amount as a flexible benefit allowance which shall be available for the purchase of benefits.
70 O.S. 26-105(B) (1998) (emphasis added).
¶ 14 These exclusions of school superintendents from the flexible benefits program indicates legislative intent to include the remaining population of education employees within the Benefits Act's advantages. See R.R. Tway, Inc., v. Oklahoma TaxCommission, 910 P.2d 972, 977 (Okla. 1995).
¶ 15 The Legislature created the flexible benefits plan within federal internal revenue proscriptions. See 70 O.S. 26-104(B) (1998). Neither federal tax statutes nor Treasury regulations limit the cafeteria benefit plan to full-time employees. See26 U.S.C.A. 125 and 26 CFR 1.125T.
¶ 16 Perhaps most telling in finding that part-time employees are not excluded by the clear language of the Benefits Act is a reading of the whole statutory education benefits scheme. The Benefits Act attempts to make major medical insurance available to education employees through the State and Education Employees Group Insurance Board:
 It is the intent of the Oklahoma State Legislature to provide a monthly flexible benefit allowance to other personnel, as defined in this act, in an amount equal to one hundred percent (100%) of the employees premium in a major medical health insurance plan offered through the State and Education Employees Group Insurance Board, beginning in the fiscal year ending June 30, 2000.
70 O.S. 26-106(A) (1998). (emphasis added).
¶ 17 The Legislature has specifically provided that part-time education employees may enroll in a school district's health insurance program through the State and Education Employees Group Insurance Board. See 74 O.S. 1308.1(2) (1998).
¶ 18 The answer to your question, then, does not depend on an interpretation of the six-hour requirement in Senate Concurrent Resolution No. 3. The language of the Benefits Act controls, and that language does not discriminate between full-time and part-time employees.
¶ 19 It is, therefore, the official Opinion of the AttorneyGeneral that:
A part-time nonclassified education employee is eligible toreceive a flexible benefits allowance under the EducationFlexible Benefits Allowance Act, 70 O.S. 26-101-70 O.S. 26-107(1998), regardless of S. Con. Res. 3, 1998 Okla. Sess. Laws2568, which purports to limit such benefits to nonclassifiededucation employees who work six or more hours per day.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
ANDREW TEVINGTON ASSISTANT ATTORNEY GENERAL
[1] See Okla. Const. Art. 5, § 26.